[S. F. No. 10099. In Bank.—September 19, 1922.]

MOTOR TRANSIT COMPANY (a Corporation) et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, and A. B. WATSON, etc., Respondents.

[1] AUTO STAGE AND TRUCK TRANSPORTATION ACT—COMPLAINT FOR ALLEGED VIOLATION — JURISDICTION OF RAILROAD COMMISSION. — Under section 7 of the Auto Stage and Truck Transportation Act (Stats. 1917, p. 330), which by specific reference to the Public Utilities Act gives the Railroad Commission the power to hear and determine complaints against transportation companies in exactly the same manner and to the same extent as against other public utilities, the commission has jurisdiction to hear and determine a complaint against a motor transit company for operating a local service without a certificate of public convenience and necessity as required by section 5 of the Auto Stage and Truck Transportation Act.

[2] PUBLIC UTILITIES ACT—COMPLAINTS—JURISDICTION OF COMMISSION —LIMITATION.—Section 60 of the Public Utilities Act is not to be literally construed to give the Railroad Commission the power to hear all complaints affecting public utilities, but it is limited in its jurisdiction to hear and determine only such complaints as are germane to the subject of the regulation and control of public utilities.

[3] AUTO STAGE AND TRUCK TRANSPORTATION ACT — CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—REGULATORY STATUTE.—Section 5 of the Auto Stage and Truck Transportation Act requiring a certificate of public convenience and necessity as a condition precedent to the construction or extension of the plant or line of certain enumerated utilities, is a regulatory statute, and being such, the Railroad Commission in hearing and determining a complaint for an alleged violation of such statute, acts within its jurisdiction to hear and determine complaints germane to the subject of the regulation and control of public utilities.

[4] PUBLIC UTILITIES—ORDER OF COMMISSION—PERFORMANCE OF PRIVATE CONTRACT—JURISDICTION NOT DIVESTED.—The fact that an order of the Railroad Commission given in pursuance of the commission's power and under the commission's duty to regulate public utilities and compel the performance of their duties to the public, incidentally requires the performance of an act which carries out

3. Jurisdiction of Public Service Commission over carriers transporting by motor trucks and buses, note, 1 A. L. R. 1460.

the terms of a private contract, does not operate to divest the commission of jurisdiction.

[5] ID.—REGULATION OF PUBLIC UTILITIES—PROPER EXERCISE OF POLICE POWER.—Statutes for the regulation of public utilities are a proper exercise by the state of its police power and as soon as the power is exercised all phases of operation of established utilities become at once subject to the police power thus called into operation.

[6] AUTO STAGE AND TRUCK TRANSPORTATION ACT—COMPANIES OPERATING PRIOR TO ENACTMENT—COMPLAINTS—JURISDICTION OF COMMISSION.—Under the Auto Stage and Truck Transportation Act, the Railroad Commission has power to hear and dispose of complaints against companies securing their operative rights prior to May 1, 1917, notwithstanding the provision of the act excepting from the requirement of obtaining a certificate of public convenience and necessity those companies operating in good faith at the time the act became effective.

[7] ID.—INJUNCTIVE ORDER—JURISDICTION OF COMMISSION.—In view of section 61 of the Public Utilities Act authorizing the railroad Commission to make and file its "order," it is not an unauthorized exercise of injunctive power to make an order requiring a motor transit company to refrain from operating as a transportation company between certain points.

[8] ID.—AMENDMENT OF ACT—EFFECT UPON COMPANIES OPERATING WITHOUT CERTIFICATE.—In view of section 5 of the Auto Stage and Truck Transportation Act requiring the companies therein enumerated to obtain a certificate of public necessity and convenience, but excepting companies operating prior to May 1, 1917, the amendment of 1919 (Stats. 1919, p. 457), relieving from the necessity of securing certificates companies operating in good faith at the time the amendment became effective, did not confer a franchise on companies commencing operations subsequent to May 1, 1917, without certificates, as only companies operating prior to May 1, 1917, were exempted from the procuring of certificates.

[9] ID.—COMPANY OPERATING THROUGH SERVICE PRIOR TO MAY 1, 1917—LOCAL SERVICE—FINDING OF COMMISSION—SUFFICIENCY OF EVIDENCE.—In this proceeding in *certiorari* to review an order of the Railroad Commission requiring an automobile stage company which was operating a through service prior to May 1, 1917, to discontinue a local service which it was maintaining without a certificate of public necessity and convenience between certain intermediate points, the evidence was sufficient to support the find-

5. State or municipal regulation of jitney buses, notes, Ann. Cas. 1916A, 1233; Ann. Cas. 1917C, 1051; Ann. Cas. 1918C, 946.

ing of the commission that such company was not maintaining such local service prior to May 1, 1917.

[10] Id.—Company Operating Through Service Prior to May 1, 1917—Extension—Necessity of Certificate.—Under the Auto Stage and Truck Transportation Act the exemption of a company operating a through service prior to May 1, 1917, from the necessity of obtaining a certificate of public necessity and convenience, did not give the company a vested right to thereafter extend its service between intermediate points without obtaining such a certificate.

[11] Railroad Commission—Orders—Scope.—Orders of the Railroad Commission being conclusive between the same parties only for the purpose for which they are made and not being binding upon the same parties in subsequent proceedings, such orders cannot be said to be binding upon different parties, and orders not attaining the status of *res adjudicata* cannot be held to rise to the dignity of *stare decisis.*

PROCEEDING in Certiorari to review an order of the Railroad Commission directing the discontinuance of service by a transportation company between certain points. Writ dismissed.

The facts are stated in the opinion of the court.

H. W. Kidd and A. W. Ashburn for Petitioners.

Hugh Gordon and William W. Clary for Respondent Railroad Commission.

Clyde Bishop for Respondent Watson.

LENNON, J.—Petitioners in this proceeding seek to have reviewed by this court an order of the Railroad Commission directing the cessation of service by the petitioner Motor Transit Company ''as a transportation company for the transportation of persons or property for compensation between the termini of Santa Ana and Anaheim and intermediate points.'' The hearing before the commission arose out of a complaint by one auto stage company against the alleged unlawful operations of a competing auto stage company between the cities of Anaheim and Santa Ana.

The ''A. R. G. Bus Company,'' prior to May 1, 1917, operated an automobile stage service between Los Angeles and San Diego, over a regular route passing through the cities

of Anaheim, Orange and Santa Ana. On January 24, 1920, it sold and transferred its business and operative rights to petitioner O. R. Fuller, who subsequently, on November 27, 1920, with the approval of the Railroad Commission, sold the business and rights so acquired to Motor Transit Company. Respondent A. B. Watson, under the name of Crown Stages, operates a local passenger service between Santa Ana and Los Angeles, the operative rights between Santa Ana and Anaheim and intermediate points having been acquired by virtue of operations prior to May 1, 1917, and those between Anaheim and Los Angeles by purchase of the rights of the Valley Stage Line. The routes of the two companies practically parallel each other between Los Angeles and Santa Ana.

On May 7, 1920, respondent Watson filed with the Railroad Commission a complaint against Fuller, the then owner of the competing line, setting forth that the latter was undertaking to transport local passengers between Los Angeles and Santa Ana and intermediate points without having sought or obtained from the Railroad Commission a certificate of public necessity and convenience, thereby violating the provisions of chapter 213, Statutes of 1917 (Stats. 1917, p. 330), as amended in 1919 (Stats. 1919, p. 457), and praying that the commission make an order discontinuing said unauthorized service. The statute just referred to provides that "No transportation company shall hereafter begin to operate any automobile, auto stage . . . , for the transportation of persons . . . for compensation on any public highway in this State without first having obtained from the Railroad Commission a certificate declaring that public convenience and necessity require said operation, but no such certificate shall be required of any transportation company as to the fixed termini between which, or the route over which, it is actually operating in good faith at the time this act becomes effective." The commission found that the predecessor in interest of the Motor Transit Company, viz., the A. R. G. Bus Company, had not in good faith operated a local business between Santa Ana and Anaheim prior to May 1, 1917; that its published tariffs and time schedules did not contemplate such local service; that the principal owner and manager of its said predecessor had executed, in the name of that company, a written agree-

ment under date of May 4, 1918, not to "apply to the Railroad Commission for permission to handle any local traffic between Anaheim and Santa Ana or intermediate points"; that the right to inaugurate such local service was not subsequently conferred upon the Motor Transit Company by any certificate of public convenience and necessity issued by the Railroad Commission, and that the operations complained of were unauthorized and in violation of the provisions of the statute (Stats. 1917, c. 213, p. 330, as amended; Stats. 1919, c. 280, p. 457). Upon these findings the commission based its order directing the defendants in said proceeding to desist operating as a transportation company between the terminal of Santa Ana and Anaheim and intermediate points.

[1] Petitioner contends that the respondent commission was in any event without jurisdiction of the subject matter embodied in the complaint presented in the proceeding before the commission, and that if the commission did have such jurisdiction it exceeded the same by making an order which in its nature and effect was injunctive. The latter contention involves the main objection presented upon this proceeding and is rested primarily upon the argument that inasmuch as the Public Utilities Act does not expressly confer the power to make orders, injunctive in character, the commission was without power to make the order complained of here.

The sole source of the commission's power to act in the proceeding at all is to be found in the constitutional and statutory provisions which create and control the jurisdiction and authority of the commission. The constitutional provisions pertinent to the point presented provide, among other things, that "The Commission shall have the power . . . to hear and determine complaints against railroad and other transportation companies. . . . shall have and exercise such power and jurisdiction to supervise and regulate public utilities . . . as shall be conferred upon it by the Legislature, . . . "

Pursuant to these constitutional provisions, the legislature enacted the "Public Utilities Act" (Stats. 1911 (Ex. Sess.), p. 18; Stats. 1915, p. 115) and the so-called "Auto Stage and Truck Transportation Act." (Stats. 1917, c. 213, p. 330; Stats. 1919, c. 280, p. 457.) The regulation of auto

stages was not included in the provisions of the Public Utilities Act as originally enacted nor as subsequently amended (Stats. 1911 (Ex. Sess.), p. 18; Stats. 1915, p. 115), but the "Auto Stage and Truck Transportation Act" in terms vested in the Railroad Commission the power and authority to supervise and regulate every transportation company in this state. Stated more precisely in the language of the latter act, "The Railroad Commission of the State of California is . . . vested with power and authority to supervise and regulate every transportation company in this state . . . The Railroad Commission shall have the power and authority, by general order or otherwise, to prescribe rules and regulations applicable to any and all transportation companies." (Stats. 1917, c. 213, sec. 4, p. 333.)

By specific reference to the Public Utilities Act the commission is given power to hear and determine complaints against transportation companies in exactly the same manner and to the same extent as it has of complaints against other public utilities. This power is conferred by section 7 of the "Auto Stage and Truck Transportation Act," which provides that "In all respects in which the railroad commission has power and authority under the constitution of this state or this act, applications and complaints may be made and filed wth the railroad commission, process issued, hearings held, opinions, orders and decisions made and filed, petitions for rehearing filed and acted upon, and petitions for writs of review or mandate filed with the supreme court of this state, considered and disposed of by said court, in the manner and under the conditions and subject to the limitations and with the effect specified in the public utilities act."

It obviously follows that sections 60 and 61 (a) of the Public Utilities Act, as originally enacted and still in force, which prescribe the power of the commission to hear and determine complaints against public utilities make and measure the power of the commission to proceed in the instant case. These sections provide that "Complaint may be made by the commission of its own motion or by any corporation or person . . . by petition or complaint in writing, setting forth any act or thing done by any public utility including any rule, regulation or charge here-

tofore established or fixed by or for any public utility in violation of any provision of law or of any order or rule of the commission.''

''At the time for any hearing before the commission, . . . the complainant and the corporation or person complained of shall be entitled to be heard and introduce evidence. . . . After the conclusion of the hearing the commission shall make and file its order, containing its decision.''

Evidently the commission proceeded under the power given by section 60, above quoted, of the Public Utilities Act, to entertain complaints against any transportation company for any ''act or thing done in violation . . . of any provision of law'' and found upon the facts presented pursuant to the allegations of the complaint before it that the Motor Transit Company was operating a local service in violation of section 5 of the ''Auto Stage and Truck Transportation Act'' (Stats. 1917, c. 213, p. 333), which, as before stated, provides in substance that no auto stage shall be operated on the highways of this state without a permit from the commission unless such company was actually operating in good faith along such highway prior to May 1, 1917. These statutory provisions, when read and considered together, we think empowered the commission to hear and determine the controversy presented to it in the instant case.

[2] It may be conceded, as is contended, that section 60 is not to be literally construed to give the commission power to hear all complaints affecting public utilities. Clearly it was not the purpose of the statute to provide the commission with power to adjudicate all controversies between litigants in the ordinary sense. It is not claimed, for instance, that this section would authorize the commission to hear and determine a charge of libel made against a public utility. The measure of the jurisdiction of the commission is to be found in a consideration of the power granted, which must be read and construed with relation to and in conjunction with the context and purpose of the statute in its entirety. Section 7 of the ''Auto Stage and Truck Transportation Act'' (Stats. 1917, p. 335), giving the commission power to hear and determine complaints against transportation companies, provides that such power

shall be exercised "In all respects in which the railroad commission has power and authority under the constitution of this state or this act." The power and authority so conferred upon the commission under the constitution and the Public Utilities Act is the power to *supervise* and *regulate*. The commission, therefore, is limited in its jurisdiction to hear and determine only such complaints as are "germane to the subject of the regulation and control of public utilities." (*Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640, 691 [Ann. Cas. 1915C, 22, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *City of Pasadena* v. *Railroad Commission,* 183 Cal. 526, 534 [10 A. L. R. 1425, 192 Pac. 25].)

[3] Clearly section 5 of the "Auto Stage and Truck Transportation Act" (Stats. 1917, c. 213, p. 333) requiring a certificate of public convenience and necessity as a condition precedent to the construction or extension of the plant or line of certain enumerated utilities, of which the petitioner is one, is a regulatory statute. It is in the interest of the public that the service rendered by public utilities be adequate and of good quality and the rates as low as possible commensurate with good service and a reasonable return to the owner. The certificate of public convenience and necessity is the means whereby protection is given to the utility rendering adequate service at a reasonable rate against ruinous competition. The person or corporation obtaining a certificate must operate at the times and in the manner prescribed by such certificate, thus furnishing uniform and efficient service to the public. If anyone else would be at liberty to operate without such a certificate he might operate at his own pleasure and only under favorable conditions, thus making it impossible for the holder of a certificate to successfully carry on his business. It is the public interest in efficient service which is being safeguarded by the requirement of a certificate. (*Oro Electric Corp.* v. *Railroad Commission,* 169 Cal. 466, 475 [147 Pac. 118]; *Public Utilities* v. *Garviloch,* 54 Utah, 406 [181 Pac. 272, P. U. R. 1919E, p. 182].) Such requirement is part of the regulation of transportation companies in the interest of the public. This, therefore, being a regulatory statute, the commission, in hearing and determining that the petitioner was violating the provisions of that statute, was acting within its jurisdic-

tion to hear and determine complaints "germane to the subject of the regulation and control of public utilities."

[4] This disposes of petitioners' contention that the commission is by its order in effect enforcing a private contract between individuals which, of course, the commission is not empowered to do. (*Western Assn. of Short Line Railroads* v. *Railroad Commission,* 173 Cal. 802 [1 A. L. R. 1455, 162 Pac. 391].) The fact that an order of the commission given in pursuance of the commission's power and under the commission's duty to regulate public utilities and compel the performance of their duties to the public incidentally requires the petitioners to do an act which carries out the terms of a private contract, does not, of course, operate to divest the commission of its jurisdiction.

Nor is there any merit in petitioner's contention that because of the establishment of petitioners' operations prior to May 1, 1917, they are not subject to the regulations of the commission. [5] Statutes for the regulation of public utilities are a proper exercise by the state of its police power. As soon as the power is exercised all phases of operation of established utilities become at once subject to the police power thus called into operation. (*Producers' Transportation Co.* v. *Railroad Commission,* 251 U. S. 228 [64 L. Ed. 239, 40 Sup. Ct. Rep. 131]; *Law* v. *Railroad Commission,* 184 Cal. 737 [10 A. L. R. 1425, 192 Pac. 25].) The statute is applicable not only to those public utilities coming into existence after its passage, but likewise to those already established and in operation. The "Auto Stage and Truck Transportation Act" (Stats. 1917, c. 213, p. 333) is a statute passed in pursuance of the police power. The only distinction recognized in the statute between those established before and those established after the passage of the act is in the method of the creation of their operative rights. A certificate of public convenience and necessity is required for any new operation, but no such certificate is required of any transportation company for the operation which was actually carried on in good faith on May 1, 1917. This distinction in the creation of their operative rights in no way affects the power of the commission to supervise and regulate them. [6] Obviously the power of the commission to hear and dispose of complaints is as

effective against companies securing their operative rights prior to May 1, 1917, as against those subsequently securing such rights under a certificate of public convenience and necessity.

[7] Granting as must be done in view of what has been said that the commission had jurisdiction of the subject matter in controversy here, it follows that the order given by the commission requiring the Motor Transit Company to refrain from doing the act found by the commission to have been done in violation of a provision of law is not an unauthorized exercise by the commission of injunctive power. The statute by its express terms authorizes the commission "to make and file its *order*." (Stats. 1911 (Ex. Sess.), sec. 61, p. 53.) As held in *Holabird* v. *Railroad Commission,* 171 Cal. 691 [154 Pac. 831], this section authorizes the commission to make whatever order may be necessary in the exercise of its jurisdiction.

As a practical matter of procedure such an order is proper. If the order so given by the commission is obeyed, then no further legal steps are necessary. It is only when such order is disregarded that it becomes necessary for the commission to institute an action in the courts to secure its enforcement. Until such order is given there is no basis upon which the commission can ask the aid of the courts.

The statute, instead of conferring upon the commission the means of directly enforcing such orders, has provided (Public Utilities Act, sec. 75) for the institution by the commission of court proceedings, or for the issuance of process by the court to carry out and make effective the orders of the commission. As was said in *Yolo Water & Power Co.* v. *Superior Court,* 43 Cal. App. 332, 341 [185 Pac. 195, 199]: "The purpose and intent in enacting section 75 is obvious. The Public Utility Act invests the board of railroad commissioners with large powers in the control of public utilities, and gives it powers to fine and punish for contempt. But the commission is not a court and has not complete court machinery. It was seen that cases might arise where punishments for contempt and fine would not accomplish the objects sought, that writs of mandamus and injunction might be needed, and such writs the commission has no power to issue. It might become necessary for it to avail itself of the equity powers of the courts. Without

express authority granted by the legislature to so do, the question of its right to bring suit might be raised in any litigation arising. Anticipating such contingency, express power was conferred upon the commission to avail itself of court processes and writs, so that its power in this regard might not be questioned.'' Of course, the mere fact that the board has no power to enforce its orders cannot be successfully urged as a denial of the power to make the order when that power is expressly given it by the statute. (*Turner Creamery Co.* v. *Chicago, Milwaukee & St. Paul Ry.*, 36 S. D. 310 [154 N. W. 819, P. U. R. 1916A, 1083]; *Cincinnati, New Orleans etc.* v. *Interstate Commerce Commission*, 162 U. S. 184 [40 L. Ed. 935, 16 Sup. Ct. Rep. 700, see, also, Rose's U. S. Notes].) New York has a similar method of enforcing the orders of its public service commission, and the courts of that state have, without questioning the power of the commission to make such order, sustained their validity by the issuance of writs of *mandamus* and injunctions to enforce them. (*Public Service Commission* v. *New York & Queens Gas Co.*, 103 Misc. Rep. 703 [170 N. Y. Supp. 1009]; *Public Service Commission* v. *Brooklyn Heights Railroad*, 105 Misc. Rep. 254 [172 N. Y. Supp. 790]; *Public Service Commission* v. *International Railway*, 106 Misc. Rep. 364 [174 N. Y. Supp. 708].)

The petitioner strongly relies upon the case of *White Bus Co.* v. *Railroad Commission*, L. A. No. 5856, to support its position that the commission had no jurisdiction to make an order injunctive in character. The commission, in that case, refused to take jurisdiction of a threatened violation of the law. Upon an application for *certiorari* to review this order this court dismissed the proceeding, thus confirming the refusal of the commission to take jurisdiction. In view of the fact that the commission has only the authority expressly delegated to it by statute and no power to control mere threatened violations of the statute has been conferred, the commission, of course, had no jurisdiction to enjoin such threatened violation. On the other hand, the statute having expressly conferred upon the commission the power and the duty to take jurisdiction of actual violations, obviously the case last above cited and relied upon by petitioner has no weight as a precedent in the instant case.

[8] It is the further contention of the petitioner that "Auto Stage and Truck Transportation Act" (Stats. 1917, c. 213, sec. 5, p. 333), having been subsequently amended by the Statutes of 1919 (Stats. 1919, c. 280, sec. 5, p. 457), the latter statute must govern and control the rights of petitioners. In the former statute no certificate was required of those operating in good faith prior to May 1, 1917. The latter statute relieves from the necessity of securing such a certificate companies operating in good faith "at the time this act becomes effective." (June 22, 1919.) Manifestly, those companies commencing operations subsequent to May 1, 1917, without the certificate of public service and convenience required by the statute were violating the statute and we cannot hold it to have been the intention of the legislature to confer a franchise upon auto stage companies by virtue of their operation prior to the date the amendment went into effect when such operation by the very terms of the former statute would have been illegal. We are, therefore, constrained to hold that any rights to maintain local service without a certificate of public convenience and necessity must have been acquired prior to May 1, 1917. This being so, the order in question was not in excess of the commission's jurisdiction and must be upheld if there be sufficient evidence to support the finding of the commission that petitioner was not on said date maintaining a local service.

[9] That there is sufficient evidence in this regard admits of no question. While the proof is not overwhelming, it is amply sufficient to support the findings. There was practically no affirmative evidence to show that the A. R. G. Bus Co., predecessor in interest of the petitioner, actually operated a local service between Santa Ana and Anaheim prior to May 1, 1917. Neither do the published schedules and time-tables show such operation. On the other hand, there was affirmative evidence that petitioners' predecessor in interest did not, prior to May 1, 1917, undertake to render local service between Anaheim and Santa Ana. This evidence is the agreement executed by E. S. Goode, general manager of the A. R. G. Bus Co., in behalf of the company, not "to apply to the Railroad Commission for permission to handle any local traffic between Anaheim and Santa Ana and intermediate points." This is an admission that no

local service had been held out by such company, as otherwise, under the terms of the statute, no application for permission to the commission would have been necessary. There is also in evidence the testimony of Mr. Goode that only occasional passengers were carried locally and that only when there was a vacant seat, showing that the business undertaken and held out to the public was a through and not a local business. Without analyzing in more detail the evidence presented, taken in its entirety it is sufficient, in our opinion, to support the findings of the commission.

[10] Finally, it is the contention of petitioners that the operation of through service prior to May 1, 1917, necessarily gave them a vested right to maintain the local service in question, and this right having been conferred by the legislature, the commission was not only without power to deprive them thereof, but exceeded its jurisdiction in determining and directing that only such service as was in actual operation prior to said date could be continued without a certificate of public convenience and necessity. This contention cannot be maintained. The primary purpose of the legislature in enacting this statute was not to confer a franchise upon the operating companies but to give into the power of the commission for regulation and control in the interest of the public the operation of auto stages for transportation. It did this by requiring every auto transportation company to secure from the commission a certificate of public convenience and necessity. It relieved from the necessity of obtaining such certificate the companies actually operating in good faith at that time. The purpose in so exempting such companies was to refrain from interfering with the operations as then carried on—in other words, to confirm in these operators the rights they were at that time exercising. But such exemption was, obviously, only to the extent of the operations then conducted. To hold that by the operation of a through line on that date petitioners were given a franchise to operate to any extent that they, in their judgment, might see fit, limited solely by the restriction that the operations must be between the same termini and over the same route, would be to materially decrease the power of the commission over these lines and thus overlook the primary purpose of the enactment which was to give to the commission, in the interest of the public, the fullest

power possible to regulate the operation of auto stage companies.

Incidentally involved in the contentions hereinbefore discussed is the contention that the decision of the commission in a prior proceeding, wherein it was held that the right of one of two competing auto bus companies to carry through passengers between San Diego and Los Angeles included the right without the issuance of a certificate of public convenience and necessity to take and carry local passengers between Anaheim, an intermediate point, and Los Angeles, was in the nature of *stare decisis* and, therefore, should have controlled and concluded the decision of the commission in the instant case. In the case of *Stratton* v. *Railroad Commission*, 186 Cal. 119, 126 [198 Pac. 1051], it is said: "The commission is not a judicial tribunal in the strict sense, . . . The commission is essentially an administrative and legislative tribunal and not a court. . . . The peculiar effect of a determination of fact operating to conclude the question for other purposes than those of the very proceeding in which the determination is made is confined to strictly judicial determination alone." [11] Orders of the commission being conclusive between the same parties only for the purpose for which they are made and not being binding upon the same parties in subsequent proceedings, certainly, such orders cannot be said to be binding upon different parties, and orders of the commission, not attaining the status of *res adjudicata*, obviously, cannot be held to rise to the dignity of *stare decisis*.

The writ is dismissed.

Myers, J., *pro tem.*, Waste, J., Lawlor, J., Richards, J., *pro tem.*, Shaw, C. J., and Wilbur, J., concurred.

Rehearing denied.

All the Justices present concurred.

Richards, J., *pro tem.*, was acting.