[S. F. No. 11467. In Bank.—December 23, 1925.]

# HENRY E. HOLMES et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] AUTO STAGE AND TRUCK TRANSPORTATION ACT—TRANSPORTATION OF FREIGHT BY MOTOR-TRUCK UNDER PRIVATE CONTRACTS—ORDER TO DESIST — CERTIORARI — COMMON CARRIERS — FINDING OF RAILROAD COMMISSION.—In a proceeding to review an order of the Railroad Commission directing petitioners to cease from transporting freight by motor-truck between certain points under private contracts unless and until they should secure a certificate of public convenience and necessity therefor, where it appears that issue was joined before the Commission as to whether or not petitioners were operating as common carriers, and the finding of said Commission is that the petitioners "are operating a transportation company as that term is defined in section 1(c) of chapter 213 of the Statutes of 1917 and amendments thereto; that they are engaged in the operation of autotrucks over the public highways for compensation, over a regular route and between fixed termini," such finding must be taken as a negative finding upon the allegation that petitioners were operating as common carriers.

[2] ID.—JURISDICTION OF RAILROAD COMMISSION OVER PRIVATE CARRIERS. The legislature by the 1919 amendment to the Auto Stage and Truck Transportation Act plainly intended and attempted to extend the jurisdiction of the Railroad Commission to private carriers when engaged in the business of transportation companies as there defined and to subject such private carriers to the burdens, obligations, and limitations imposed by that act.

[3] ID.—USE OF PUBLIC HIGHWAYS BY COMMON CARRIERS—IMPOSITION OF BURDENS AND LIMITATIONS—POWER OF STATE.—The state possesses the power to impose the burdens and limitations provided for by the Auto Stage and Truck Transportation Act on common carriers using the public highways for the transaction of their business in the transportation of persons or property for hire.

[4] ID.—PRIVATE USE OF PUBLIC HIGHWAYS FOR PRIVATE BUSINESS— POWER OF STATE.—The rule that a citizen has no right to make the highways his place of business by using them as a common carrier for hire, and that such use is a privilege which may be granted or withheld by the state in its discretion without violating either the

2. Jurisdiction of Public Service Commission over carriers transporting by motor-trucks or busses, notes, 1 A. L. R. 1460; 9 A. L. R. 1011. See, also, 3 Cal. Jur. 776; 4 Cal. Jur. 829.

3. See 13 Cal. Jur. 372; 13 R. C. L. 164.

due process clause or the equal protection clause, is equally applicable to all persons who seek to make a special and private use of the public highways by transacting their private business thereon, and applies with equal force to private carriers who engage in the business of transportation for hire upon the public highways.

[5] ID.—PROHIBITION BY STATE—REASON FOR RULE.—The reason for the rule which authorizes the state to prohibit the private use of the highways by persons who engage in the business of transportation for hire is not that they are common carriers. It is that they are making a private use of the public highways which are owned and paid for by the public and which are open alike to all persons.

[6] ID.—MEANING OF ACT.—By the Auto Stage and Truck Transportation Act the state says in effect to the citizen, "I will grant you the special privilege of using my highways for your private business upon condition that you in turn submit yourself and your property to such regulations as I impose. I will not compel you to submit to these regulations, but if you are not willing to do so, I shall not grant you this special privilege."

[7] ID.—CONSTITUTIONAL LAW.—The Auto Stage and Truck Transportation Act does not deny the equal protection of the law to private carriers engaged in the business of transportation of the property of others for compensation over the public highways, as there is a natural or inherent basis for a classification and distinction between such private carriers and those who are engaged in other lines of business and who use the highways in the transportation of their goods merely as an incident to such business.

[8] ID.—TRANSPORTATION OF ONE'S OWN FREIGHT—TRANSPORTER NOT CARRIER.—One who transports merely his own freight over the public highways is not a carrier, private or otherwise.

[9] ID.—WHO IS CARRIER.—One who engages as an independent calling in the transportation of goods for another or for others under contract and for compensation is engaged in the business of transportation and is a carrier.

[10] ID.—WHEN STATUTE NOT LACKING IN UNIFORMITY.—A statute is not lacking in uniformity if it operates alike upon all those comprised within a class defined therein which is based upon some natural, inherent, or constitutional ground of classification.

[11] ID.—DISCRETION VESTED BY ACT IN RAILROAD COMMISSION—CONSTITUTIONAL LAW.—There is no merit in the suggestion that the Auto Stage and Truck Transportation Act is unconstitutional in

8. Person engaged in local transportation of goods as common carrier, note, 18 A. L. R. 1316. See, also, 4 Cal. Jur. 815; 4 R. C. L. 546.

10. See 5 Cal. Jur. 818; 6 R. C. L. 375.

that it vests an arbitrary discretion in the Railroad Commission. The discretion of the Commission is not arbitrary but is controlled and guided by the relation of the facts found by it to the public convenience and necessity.

[12] Id.—Operation Between Fixed Termini and Over Regular Route—Finding—Certiorari.—A finding by the Railroad Commission that a private carrier of freight is operating between fixed termini and over a regular route is subject to review, notwithstanding that the Auto Stage and Truck Transportation Act provides that the question whether the carrier is so operating is one of fact and that the finding of the Commission thereon shall be final and shall not be subject to review; but such review, however, cannot extend beyond the inquiry as to whether or not there is some substantial evidence to support the finding.

[13] Id.—Jurisdiction.—In this proceeding to review an order of the Railroad Commission directing the petitioners to cease operating under private contracts with shippers in the transportation of freight by motor-truck, it is sufficient to sustain the jurisdiction of the Railroad Commission if there be substantial evidence to support either the finding that petitioners were operating between fixed termini or the finding that they were operating over a regular route, as the statute is in the disjunctive.

[14] Id.—Finding—Evidence.—In such proceeding, the finding of the Railroad Commission that petitioners were operating between fixed termini and over a regular route is sustained by the evidence, and if it were conceded that the evidence would equally sustain a contrary finding that circumstance would be immaterial.

(1) 10 C. J., p. 59, n. 72 New.   (2) 10 C. J., p. 59, n. 72 New. (3) 10 C. J., p. 59, n. 72 New.   (4) 10 C. J., p. 59, n. 72 New. (5) 10 C. J., p. 52, n. 77, p. 54, n. 7 New.   (6) 10 C. J., p. 59, n. 72 New.   (7) 10 C. J., p. 53, n. 85.   (8) 10 C. J., p. 37, n. 9 New.   (9) 10 C. J., p. 37, n. 1.   (10) 12 C. J., p. 1129, n. 18. (11) 10 C. J., p. 55, n. 26, 27 New.   (12) 10 C. J., p. 59, n. 72 New.   (13) 10 C. J., p. 59, n. 72 New.   (14) 10 C. J., p. 59, n. 72 New.

PROCEEDING in Certiorari to annul an order of the Railroad Commission directing private carriers of freight over public highways for compensation to cease from transportation unless and until they should secure a certificate of public convenience and necessity therefor. Order affirmed.

The facts are stated in the opinion of the court.

Thelen & Marrin for Petitioners.

Carl I. Wheat and Woodward M. Taylor for Respondents.

Gwyn H. Baker for Respondent Highway Transport Co.

Walter H. Robinson for Respondent S. B. McLenegan & Son.

MYERS, C. J.—Review to annul a decision and order of the respondent Railroad Commission. The decision sought to be reviewed was the outcome of a proceeding before the Commission wherein the respondents Highway Transport Company and S. B. McLenegan & Son, both "certificated" common carriers of freight by motor-truck between San Francisco and San Jose and intermediate points, filed complaint alleging that the petitioners herein were operating motor-trucks without having obtained a certificate of public convenience and necessity to do so for the transportation of freight for hire over the public highways between San Francisco and San Jose and intermediate points along and over the same routes and roads over which the complainants were operating; that such operations were in violation of law, were in direct competition with the complainants, and resulted in injury and damage to them. The defendants therein, petitioners here, filed an answer denying the allegations of the complaint and setting up as a separate defense that defendants were the owners of certain automobile trucks which they leased to a number of "selected" shippers of freight for use by said shippers in the distribution of merchandise between San Francisco and such points in San Mateo and Santa Clara Counties as from time to time served the convenience and necessity of said shippers. The answer further denied that the defendants were common carriers, that they operated between fixed termini or over a regular route, that they were operating in violation of law and that they were subject to the jurisdiction of the Railroad Commission. Upon the issues thus joined the Railroad Commission after due notice and after a full and extended hearing rendered its decision and order now before this court for review, wherein it was found that the defendants, petitioners herein, were operating as a transportation company as that term is defined in section 1(c) of chapter 213, Statutes of 1917 (Stats. 1917, p. 330), as amended (Stats. 1919, p. 458), and that they were engaged in the operation of motor-

trucks over the public highways for compensation, over a regular route and between fixed termini, namely, ''San Francisco to San Jose and intermediate points.'' The Commission thereupon made its order directing the defendants to cease and thereafter desist from any and all such transportation unless and until they should secure a certificate of public convenience and necessity therefor. The defendants, after the denial of their petition for a rehearing of said order and decision, instituted the present proceedings in this court for a writ of review to annul the same.

Petitioners were engaged in operating three motor-trucks in the transportation of merchandise consisting principally of drugs, drug sundries, and groceries from wholesale houses in San Francisco to retail dealers in San Jose and at other points in Santa Clara and San Mateo Counties, which points, for the most part, are intermediate points between San Francisco and San Jose. Petitioners operated under separate contracts with the several shippers, twenty-three in number, each contract being entered into severally by petitioners as one party and by one of the shippers as the other party thereto. These contracts were substantially alike in their terms (except as to minor variations not deemed pertinent to the present inquiry). By each of these contracts the petitioners purported to lease their trucks to the shipper for use by the latter in transporting its merchandise from San Francisco to points in Santa Clara and San Mateo Counties at an agreed rental of $19.50 per truck per day. It is further provided that if on any day only a portion of the capacity of any truck is used for such transportation the rental shall be such proportion of said rental of $19.50 as is represented by the ratio which the capacity of the truck actually utilized in the transportation of the lessee's merchandise bears to the total agreed capacity of the truck, and, further, that the minimum rental in connection with any transportation shall be based on one-thirtieth of the capacity of the truck. It is apparent from the other provisions of these ''leases'' and from the manner in which they were performed by the parties that they are nothing more than contracts for the transportation of merchandise for compensation at the rate of thirty-two and one-half cents per hundred pounds, subject to a minimum charge of sixty-five cents per shipment. The Commission so found and its find-

ing is abundantly supported, if not compelled, by the evidence. [1] The Commission did not expressly find upon the issue as to whether or not the petitioners were operating as common carriers, which was alleged in the complaint and denied in the answer. The finding is that the petitioners "are operating a transportation company as that term is defined in section 1(c) of chapter 213 of the Statutes of 1917 and amendments thereto; that they are engaged in the operation of autotrucks over the public highways for compensation, over a regular route and between fixed termini, namely, San Francisco to San Jose and intermediate points, . . . " Petitioners contend that this finding must be taken by us as a negative finding upon the allegation that they were operating as common carriers and we are inclined to agree with this contention. The carrier respondents strongly insist that under the rule which requires the construction of findings so as to support the judgment we should construe this as a finding that petitioners were in fact operating as common carriers and that such finding is amply supported by the evidence herein. It may be that the evidence herein would sustain such a finding if it had been made by the Commission. As to that we express no opinion. We are of the opinion that the present is not a proper case for the application of the rule invoked by the carrier respondents. A careful reading of the entire decision of the Commission, of which the quoted finding forms but a part, makes it clear that the Commission did not intend to find as a fact that petitioners were operating as common carriers. On the contrary, the Commission took the view that petitioners were subject to its jurisdiction under the other facts and circumstances found herein, regardless of the question whether they were operating as common carriers or as private carriers, and in accordance with that view it deliberately and intentionally omitted to find upon this question. If, therefore, we should conclude that the operation of petitioners as common carriers is a fact essential to the jurisdiction of the Commission over them, it would be our duty to annul this decision and order. This precise question was involved in the recent case of *Frost* v. *Railroad Com., ante,* p. 230 [240 Pac. 26], which was decided by us adversely to petitioners' contentions herein. That case must be regarded as controlling with respect to this phase of the present in-

quiry, and the respective counsel for the petitioners and for the Railroad Commission so concede. Counsel for petitioners argue most earnestly that our decision in the Frost case is erroneous and should be promptly overruled. We have given careful consideration to these arguments and are not disposed to depart from our views as expressed in that case. [2] The gist of our conclusion in that case may be briefly stated as follows: The legislature by the 1919 amendment to the Auto Stage and Truck Transportation Act plainly intended and attempted to extend the jurisdiction of the Railroad Commission to private carriers when engaged in the business of transportation companies as there defined and to subject such private carriers to the burdens, obligations, and limitations imposed by that act. The question, then, is whether the state has the power to impose such burdens and limitations upon private carriers when using the public highways for the transaction of their business or whether its power in this behalf is limited in its application to public carriers. [3] It is now universally recognized that the state does possess such power with respect to common carriers using the public highways for the transaction of their business in the transportation of persons or property for hire. That rule is stated as follows by the supreme court of the United States: "A citizen may have, under the fourteenth amendment, the right to travel and transport his property upon them (the public highways) by auto vehicle, but he has no right to make the highways his place of business by using them *as a common carrier for hire.* Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause." (*Buck* v. *Kuykendall,* 267 U. S. 307 [38 A. L. R. 286, 69 L. Ed. 623, 45 Sup. Ct. Rep. 324].) (Italics added.) Petitioners emphasize the words which we have italicized and insist that this rule is limited in its application to common carriers. [4] We think it is equally applicable to all persons who seek to make a special and private use of the public highways by transacting their private business thereon and that it applies with equal force to private carriers who engage in the business of transportation for hire upon the public highways. [5] The reason for the rule which authorizes the state to prohibit the private use of the highways by such

carriers is not that they are common carriers. It is that they are making a private use of the public highways, which are owned and paid for by the public and which are open alike to all persons. It is true that common carriers are subject to regulation by the state because the fact that they are engaged in public service causes their business to be effected with public interest and thus justifies the regulation thereof by public authority. But this is not, as it seems to us, the reason for the existence of the rule above quoted. The circumstance that they are public carriers would subject them to *regulation*, but it would not subject their business to *complete prohibition*, it being a business which is not inherently unlawful or wrongful, but it is universally conceded that the state does have the power and the right to completely prohibit the use of its public highways by a common carrier. This must rest not upon the fact that he is a common carrier, but upon the fact he is making a private use of the public highways. This conclusion is not based, as petitioners assert, upon the power of the state to *regulate the use* of its highways, it is based upon the power of the state *to prohibit the private use* of its highways or in its discretion to grant the privilege of such private use upon such conditions as it may see fit to impose. [6] By the statute here in question the state says in effect to the citizen: "I will grant you the special privilege of using my highways for your private business upon condition that you in turn submit yourself and your property to such regulations as I impose. I will not compel you to submit to these regulations, but if you are not willing to do so, I shall not grant you this special privilege." A conclusion somewhat analogous to this is presented in the case of *Producers Transp. Co.* v. *Railroad Com.* (176 Cal. 499 [169 Pac. 59]), relied upon by petitioners herein. It was there held that a state has no power by mere legislative fiat, nor even by such fiat embodied in its constitution, to transmute a private carrier into a common carrier. With that conclusion we are in entire accord, but it was also there held that if a private carrier exercises the right of eminent domain in aid of his transportation business he will be deemed thereby to have dedicated his transportation system to a public use and to have thereby become a public carrier. The circumstance that the right of eminent domain is a right

of sovereignty which is inherent in the state does not seem to us of particular importance. The important fact, as it seems to us, is that the right of eminent domain is not possessed by individuals as a matter of right. When the state offers to grant this right to an individual, it is as to him a special privilege. If the state offers this privilege to him upon expressed conditions, he will be deemed, if he exercises the right, to have accepted the offer and to have agreed to the conditions. He is under no compulsion to submit to the conditions. If he does not submit to the conditions he cannot exercise the privilege. If he does exercise the privilege he will be deemed to have voluntarily agreed to the conditions. Herein lies the distinction between the present case and the case of *Michigan Public Utilities Com.* v. *Duke* (266 U. S. 570 [36 A. L. R. 1105, 69 L. Ed. 445, 45 Sup. Ct. Rep. 191]). Counsel for petitioners direct our attention to the fact that the reasoning adopted by us in the Frost case and adhered to herein was urged upon the supreme court of the United States in the Duke case and was by that court rejected. We agree that it was properly rejected in that case because it was not tenable under the facts of that case. It could not be said that by continuing in the transportation of property for hire after the enactment of the Michigan Public Utilities Act Duke had voluntarily elected to dedicate his property to a public use, because Duke had no opportunity for an election. He had no choice but to continue in the transportation of property after the enactment of the statute. He was under compulsion so to do because of his contracts which were in existence and subsisting at the time of its enactment. Therefore, to hold the statute applicable to him would be to say in effect that the state had the power to transmute him from a private carrier into a public carrier *nolens volens,* and this we agree it could not do. This is what we had in mind when we said in this connection in the Frost case, ''to give it effect in its application to his situation would have been to impair the obligation of those contracts.'' We intended thereby to point out that the only liberty of choice offered by the Michigan statute in its application to Duke was a Hobson's choice between dedicating his property to the public on the one hand and breaching his contracts on the other. We did not intend thereby to intimate that the decision of the United States

supreme court in the Duke case was rested in part upon the impairment of the contracts provision of the federal constitution. It clearly was not. In the present case the petitioners did not enter into the transportation business until long after the enactment of the statute here in question. We find here no such obstacle as there was in the Duke case in the way of the conclusion that by so doing petitioners must be deemed to have voluntarily elected to submit themselves to the conditions imposed by the statute. We do not agree with petitioners that the Washington decisions cited by us in the Frost case have all been overruled by the later decisions of that court in *Davis* v. *Metcalf*, 131 Wash. 141 [229 Pac. 2]. They were not expressly overruled therein. On the contrary, they are cited with apparent approval. It must be conceded, however, that the implications of some of the language used in the opinion in that case appear to be in conflict with your conclusions in the Frost case and herein. That case, however, did not involve the question of the *power* of the Railroad Commission to make an order in respect of a private carrier such as is here under review. That case arose as a suit in equity by a certificated carrier to procure an injunction restraining an uncertificated carrier from transporting goods for compensation over a regular route in competition with the plaintiff. The trial court denied the injunction and the supreme court affirmed the judgment. It does not necessarily follow from anything said or decided in that case that if the Railroad Commission of that state had, after a hearing, made an order requiring the defendant to desist from further transportation over the highways until he obtained a certificate of public convenience and necessity, that such order would have been annulled by the court. That question has not yet been litigated in the state of Washington so far as we are advised. The recent Utah case of *State* v. *Nelson*, 65 Utah, 457 [238 Pac. 237], is, we think, distinguished from the present case by the differences in the Utah statute. The grant of jurisdiction to the Commission in that statute is "to supervise and regulate every public utility in this state as defined in this title. . . . " The term "public utility" is defined to include "every . . . automobile corporation . . . *where the service is performed for or the commodity delivered to the public* or any portion thereof." The term

"common carrier" is defined to include "every . . . automobile corporation . . . operating *for public service* within this state; and every person or corporation . . . engaged in the transportation of persons or property *for public service* over regular routes between points within this state." (Italics added.)   The section of the Utah statute providing for the issuance of certificates of public convenience and necessity, while it does not expressly so provide, nevertheless indicates by clear implication the legislative intent that it shall be applicable only to public utilities as above defined. The Utah court held correctly, as we think, that the intent of the Utah statute was to limit the regulatory powers of the Railroad Commission to common carriers and other public utilities.   Having reached this conclusion the language in its opinion which is relied upon by petitioners herein must, as it seems to us, be regarded as *obiter*.   We agree with petitioners that the case of *Hissen* v. *Guran,* 112 Ohio St. 59 [146 N. E. 808], is in conflict with our conclusion in the Frost case herein.   It may be noted, however, that the reasoning which has impelled us to our conclusion does not appear to have been suggested to or at all considered by that court.   We are disposed to adhere to that conclusion, notwithstanding the absence of any direct authority to support it.

[7] If the foregoing conclusion is sound, it is, as it seems to us, a sufficient answer to all of petitioners' contentions based upon the guaranties of the federal constitution, with the possible exception of the contention that the Auto Stage and Truck Transportation Act as amended and as construed by us denies to petitioners the equal protection of the law. Petitioners' first point under this contention is disposed of by our decision in the case of *Franchise Motor Freight Assn.* v. *Seavey,* 196 Cal. 77 [235 Pac. 1000].   Petitioners seemingly take the position that there is no legitimate basis for a classification and distinction between private carriers engaged in the business of transporting freight over the public highways on the one hand and private individuals engaged in other lines of business transporting their own freight over the public highways as an incident to such business on the other hand.   Petitioners propound the following question: "What reasonable ground of distinction is there between a *private* carrier engaged in the business of

transporting his own freight over the public highway between two points and another *private* carrier who is engaged in the transportation of the same class of freight between the same points at the same time over the same highway, the only distinction being that the freight transported by the latter belongs to his neighbor or some other third party instead of to himself?'' The facts assumed in this question are self-contradictory. [8] One who transports merely his own freight over the highway is not a carrier, private or otherwise. He may be a farmer or a manufacturer or a merchant or what not, but the business in which he is engaged is not the business of transportation. He is not a carrier unless he engages in the business of transportation of the persons or property of others for compensation. One who transports merely his own goods is of necessity engaged in some business other than transportation and the transportation of such goods is no more than an incident to such business. So, also, one who transports the goods of another as a servant or agent of such other is not engaged in the business of transportation, but in so doing is engaged in the business of his master or principal, whatever that business may be. [9] But one who engages as an independent calling in the transportation of goods for another or for others under contract and for compensation is engaged in the business of transportation and is a carrier. The true question in this behalf is, therefore, Is there a natural or inherent basis for a classification and distinction between those who engage in the business of transportation of the property of others for compensation over the public highways, thus making a private use of those highways, and those on the other hand who are engaged in other lines of business and who use the highways in the transportation of their goods merely as an incident to such business, for which purpose the highways are open alike to all? This question seems to us to answer itself. [10] It is too well settled to require citation of authority that a statute is not lacking in uniformity if it operates alike upon all those comprised within a class defined therein which is based upon some natural, inherent, or constitutional ground of classification.

[11] We find no merit in the suggestion that the act is unconstitutional in that it vests an arbitrary discretion in

the Railroad Commission. The discretion of the Commission is not arbitrary but is controlled and guided by the relation of the facts found by it to the public convenience and necessity (*Tarpey* v. *McClure,* 190 Cal. 593, 600 [213 Pac. 983], and cases cited).

The final contention necessary to be considered herein is that the finding of the Commission to the effect that petitioners were operating between fixed termini and over a regular route is unsustained by the evidence. The statute defines the words "between fixed termini or over a regular route" to mean "the termini or route between or over which any corporation or person . . . usually or ordinarily operate any automobile, bus, auto truck, stage or auto stage, even though there may be departures from said termini or route, whether such departures be periodic or irregular." It also provides that this shall be a question of fact and that the finding of the Commission thereon shall be final and shall not be subject to review. [12] We agree with petitioners that the finding is, however, subject to review, notwithstanding the last-mentioned provision of the statute, for the reason that the fact in question is one which is essential to the jurisdiction of the Commission. Such review, however, cannot extend beyond the inquiry as to whether or not there is some substantial evidence to support the finding. If there is, the finding must be sustained, no matter how much evidence there may be in conflict therewith. [13] In this connection, it is to be noted, however, that it is not necessary that the evidence shall sustain both of the findings of the Commission, namely, that petitioners were operating between fixed termini and that they were operating over a regular route. The statute is in the disjunctive and it is sufficient in this connection to sustain the jurisdiction of the Commission if there was substantial evidence to support either of these findings. The decision of the Commission contains a fair *résumé* of the evidence upon this question and we quote therefrom as follows:

"Defendants contend that they are not operating between fixed termini nor over any regular route, because they have had no depot at any point in San Mateo or Santa Clara counties, nor have they a telephone at such points; that deliveries are made either to store or sidewalk; that there is no point in any city or town in San Mateo or Santa Clara

counties which constitutes a terminus, since the destination of trucks is determined entirely by the load which the 'lessees' of the particular truck happen to offer for transportation on that particular trip; and that there are no cities or towns in San Mateo or Santa Clara county to which any trucks regularly go on all trips.

"It is true that each and every truck operated down the Peninsula by defendants does not stop for pick-up or delivery of merchandise at each and every point along the highway, San Francisco to San Jose, inclusive, and that on occasions the trucks have gone off the highway for several miles to make deliveries to points such as the County Poor Farm back of Belmont, Camp No. 4 on the Skyline Boulevard, Chadwick and Sykes' Camp three miles east of Redwood City, etc. The evidence, however, does show that there is only one main highway known as the Peninsula Highway over which the trucks of the defendants usually or ordinarily operate; that defendants' drivers are instructed during fair weather to use what is known as the Bay Shore Highway out of San Francisco to its connection with the main Peninsula Highway at San Bruno and in rainy weather to use the Mission Road through Colma to San Bruno. From San Bruno there is but a single route through Burlingame, San Mateo, Belmont, Redwood City, Menlo Park, Palo Alto and other intermediate points, to San Jose. This main State Highway is usually and ordinarily used with the exception of the infrequent occasions upon which, as mentioned above, a truck carries merchandise destined to points somewhat off the highway.

"In connection with defendants' Exhibit No. 12, entitled 'Some Routes used by H. E. and P. W. Holmes,' P. W. Holmes testified that no two of such routes were alike. Route No. 3 names Redwood City only; No 5 Burlingame-Redwood City; No. 12 Redwood City-Burlingame. These three routes, however, when taken in connection with San Francisco as a northern terminus, are identical in every respect. Transposing the names of communities does not differentiate as to route over which the trucks travel, but merely shows a difference in the routing of particular deliveries. In fact, this entire exhibit in the main substantiates the contention of complainants' that defendants' trucks do usually and ordinarily operate over a regular route or

between fixed termini as represented by manifests therein named.

"Defendants further contend that they have no fixed termini due to the fact that the manifests submitted in the evidence covering the month of January, 1924, show a different southerly terminus on different trips. Analysis of this evidence shows that during the thirty-day period above mentioned, San Jose or a point immediately adjacent to the city limits of San Jose, such as Alum Rock, Meridian Road, etc., appears as the most southerly terminus upon twenty occasions, the most southerly destination on other occasions being some point along what is known as the main Peninsula Highway, San Francisco to San Jose, such as Redwood City, which appears some seven times, or Palo Alto, which appears some five times.

"Certainly if a truck carries no merchandise for delivery upon a specified trip which would necessitate it going the entire length of its route and has no call for a pick-up on the northbound trip, it would in any case turn back after making its most southerly delivery, and if this Commission should hold that the law contemplated this class of operation as not being over a regular route no truck operator in the state could be held to fall within the provisions of the state regulation, due to the fact that one or more of his trucks on infrequent occasions might not cover the entire route usually or ordinarily served by him."

In addition to the foregoing it may be noted that at the hearing before the Commission petitioners introduced an exhibit consisting of a schedule showing the points of all deliveries made by them during the second week of each of the months of December, 1923, and January, February and March, 1924, in connection with which they produced testimony that the deliveries during those weeks were fairly typical of all of their operations. The schedule shows all of the deliveries made by petitioners on twenty-three working days comprising those weeks and it appears therefrom that upon every one of those days petitioners made deliveries from San Francisco to San Jose and to intermediate points. Under the statute it is immaterial that there were departures from the termini and from the route "whether such departures be periodic or irregular." [14] We are satisfied that the finding of the Commission is sustained by

197 Cal.—41

the evidence, and if it were conceded that the evidence would equally sustain a contrary finding that circumstance would be immaterial.

The decision and order of the Commission are affirmed and the writ discharged.

Lawlor, J., Richards, J., Waste, J., Seawell, J., and Lennon, J., concurred.

SHENK, J., Dissenting. I cannot agree with the reasoning and conclusion of the prevailing opinion. It appears that the petitioners had applied to the Commission for a certificate of public convenience and necessity. By that application they impliedly consented to subject themselves to the jurisdiction of the Commission and to comply with the conditions which the law and the Commission might impose. Included in those conditions under section 4 of the Auto Stage and Truck Transportation Act would be that the Commission should have the power to fix their rates, regulate their service, and in general provide that the applicant operate as a common carrier in the event that the certificate be issued. The application, however, was denied. Such action was within the power of the Commission under section 7 of the act, which provides that the Commission may grant or deny such a certificate "with or without hearing." The petitioners established themselves as a private carrier. The respondent certificated carriers filed a complaint against them before the Commission, alleging that the petitioners were a transportation company as defined by the Auto Stage and Truck Transportation Act and as such were operating in direct competition with the complainants and were injuring and damaging their business. The petitioners were summoned before the Commission and in an answer filed by them they denied that they were a transportation company as defined by the act. After notice and an extended hearing the Commission found that the petitioners were a transportation company, operating as a private carrier and issued an injunction directing them "to cease and hereafter to desist from any and all such transportation unless and until they have secured from this Commission a certificate declaring that public convenience and necessity require the resumption or continuance thereof." The effect of the de-

cision and order of the Commission is to put the petitioners
out of business, for it enjoins them from operating "unless
and until" they obtain a certificate and on application the
Commission denies the certificate.

Under sections 22 and 23 of article XII of the constitu-
tion and the decisions of this court the Commission has
jurisdiction only of the regulation and control of public
utilities and matters which are germane to such regulation
and control.   This is conceded in the prevailing opinion but
it is held, following the Frost case, that the regulation of
such a private carrier is so germane because forsooth the
private carrier is in competition with the public carrier.
This conclusion in my opinion is not supported either by
reason or authority.   If that conclusion be sound the result
would be that the Commission may now require a truck
owner, engaged exclusively in the business of operating his
truck for transportation of freight on the public highways
under contract with the sole owner of a chain of stores, to
apply for a certificate of public convenience and necessity
or go out of business, and by denying his application put
him out of business.   To pursue the subject still further it
would logically follow that the Commission could be en-
dowed by the legislature under the present constitutional
grant with the power to say that no one may use the pub-
lic highways for the transportation of his own goods because
by so doing he would take from the certificated operator a
revenue which the latter might otherwise receive.   By the
same reasoning the legislature . could vest the Commission
with power to prohibit the use of private passenger auto-
mobiles operating on the public highway because such use
would be in competition with regulated common carriers of
passengers with possible destruction of the business of the
latter.   Such a result may not be contemplated as within
the power of the state and more particularly within the
constitutional powers of the Railroad Commission as defined
and limited by this court.

Nor is the action of the Commission authorized by the
Public Utilities Act or the Auto Stage and Truck Transpor-
tation Act.   The power of the Commission to entertain com-
plaints under the Public Utilities Act, under sections 60 and
61a, is with reference to "any act or thing done or omitted
to be done by any public utility."   Section 7 of the Auto

Stage and Truck Transportation Act provides that in all respects in which the Railroad Commission "has power and authority under the Constitution of this state or this act" complaints *may* be filed with the Commission and disposed of "in the manner, under the limitations and with the effect specified in the public utilities act." In *Motor Transit Co.* v. *Railroad Com.,* 189 Cal. 573 [209 Pac. 586, 588], this court said at page 578: "By specific reference to the public utilities act the commission is given power to hear and determine complaints against transportation companies in exactly the same manner and to the same extent as it has of complaints against other public utilities. This power is conferred by section 7 of the 'Auto Stage and Truck Transportation Act.' . . . It obviously follows that sections 60 and 61 (a) of the public utilities act, as originally enacted and still in force, which prescribe the power of the commission to hear and determine complaints against public utilities make [mark] and measure the power of the commission to proceed in the instant case." Said section is not merely procedural. It vests power in the Commission to entertain complaints and to take action thereon. The restrictions and limitations specified in the section are that, for the purpose of procedure, the terms of the Public Utilities Act shall apply.

If the Auto Stage and Truck Transportation Act purports to vest in the Commission jurisdiction over private carriers, in my opinion it is to that extent contrary to the constitution. Such a conclusion would not deprive the Commission of the power to entertain complaints against transportation companies which are common carriers in fact but are seeking to avoid the requirements of the act by masquerading as private carriers. If the petitioners had been found to be a common carrier in fact, the Commission would have had jurisdiction over them and could have properly exercised its authority in prohibiting their operations. But when the Commission found the petitioners to be a private carrier, and it did so find, the jurisdiction of the Commission over them was at an end. It seems to me that the prevailing opinion has misconceived the real purpose and object of the Auto Stage and Truck Transportation Act. The opinion fails to distinguish between regulation looking to safety and the conservation of the highways and the regulation of per-

sons by whom the highways may be used. As to regulations concerning safety and the conservation of the highways they must be uniform and apply equally as between those similarly situated and may comprehend all uses both public and private. The Motor Vehicle Act is a familiar example of such regulation. But such an act necessarily prescribes a uniform course of conduct to which all must conform and when its requirements are met must be available to all. Use of the highways under such an act may be regulated, but not prohibited, with certain exceptions not material here. Concerning the regulation of the persons who may use the public highways it is unquestionably true that the state may not only regulate but may prohibit the use thereof by persons, firms or corporations engaged in the business of a common carrier. It may grant the privilege to one carrier and deny it to another. It may regulate the charges and service of a common carrier and it may prevent other common carriers from competing with a privileged carrier. Such is the purpose of the Auto Stage and Truck Transportation Act. In other words, the purpose of the regulatory provision here in question is to prevent, in the public interest, ruinous competition as between concerns engaged in a like public business. With reference to a similar act in the state of Washington the supreme court of the United States in *Buck* v. *Kuykendall,* 267 U. S. 307 [38 A. L. R. 286, 69 L. Ed. 623, 45 Sup. Ct. Rep. 324], said: "Its primary purpose is not regulation with a view to safety or to conservation of the highways, but the prohibition of competition. It determines not the manner of use but the persons by whom the highways may be used." In determining the persons by whom the highways may be used the state has no power, in my judgment, under the guise of prohibiting competition, to deny to its citizens the right to use the public highways for their own private purposes, whether for business or for pleasure. But assuming that it has that right, and particularly the right to prohibit a private business use of the highways, as announced by the opinion, it would necessarily be true that such regulatory prohibitions must be uniform and apply to all similarly situated and be enforced through the medium of a state agency duly constituted for that purpose. But in this case a state agency whose judicial powers extend only to the regulation

·and control of public utilities and matters properly germane
thereto proceeds to hale before it a concern using the high-
ways for its own private purposes, its private rights are
adjudicated, it is found to be engaged in a private business
and it is put out of business because, forsooth, its private
business diminishes the revenues of a certificated common
carrier. That the Commission acted judicially in determin-
ing, after notice and hearing and on evidence, the status
of the defendants before it and in issuing the injunction
cannot be denied. That the Commission may act judicially
when legally authorized so to do is likewise beyond question.
Its authority to act in that capacity, however, cannot be
determined alone from a consideration of the amendment
to the statute in 1919. Such a grant of power must come
from the constitution or from some act of the legislature
which is constitutionally authorized. It is not contended,
as indeed it may not be, that the Commission has direct grant
from the constitution to regulate private business. True,
this Court compelled the Commission to assume jurisdiction
of transportation companies prior to any legislative enact-
ment on the subject. (*Western Association etc. R. R.* v. *Rail-
road Com.*, 173 Cal. 802 [1 A. L. R. 1455, 162 Pac. 391]),
but the transportation companies before the Commission in
the proceeding involved in that case and over which the
Commission was required to take jurisdiction were admit-
tedly common carriers and, as such, public utilities within
the definition of section 23, article XII, of the constitution.
The whole purpose of that section and of the preceding sec-
tion 22 in re-establishing the Railroad Commission and en-
dowing it with extensive powers was to regulate and control
public utilities privately owned (*City of Pasadena* v. *Rail-
road Com.*, 183 Cal. 526, 534 [10 A. L. R. 1425, 192 Pac.
25]), and it is settled by the decisions of this court beyond
question that such additional powers as the legislature may
confer upon the Commission must be "germane to the sub-
ject of regulation and control of public utilities." (*Pacific
T. & T. Co.* v. *Eshleman*, 166 Cal. 640 [Ann. Cas. 1915C,
822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *City of
Pasadena* v. *Railroad Com.*, *supra; Motor Transit Co.* v.
*Railroad Com.*, 189 Cal. 573 [209 Pac. 586].) The Com-
mission recognizes that such is the rule, but contends "that
the regulation of the type of carriage here in question is,

because of its power to destroy regulated carriage, most cognate and germane to the subject of the regulation and control of public utilities [carriers]." I deny that the Commission has power to suppress and destroy a private business because such private business may be in competition with the business of the common carrier. This is, indeed, a curious but nevertheless an effective method of taking private property for public use without compensation. Furthermore, if the question of competition be the test and the elimination of competition be germane to the subject of regulation and control of the public utility it is difficult to conceive why it is necessary to consider the use of the public highways in connection with such competition, for if the power to suppress competition be possessed by the Commission it may be exercised against the outlawed competitor whether he operate on the public highways or elsewhere. If the suppression of competition alone does not make such regulation germane to the subject of regulation and control of public utilities, then it cannot be made so germane under the guise of regulating the use of the public highways. We are here dealing with public and private concerns which use the public highways in their business, but the fact that they are so using them, in so far as competition is concerned, is a mere circumstance.

The prevailing opinion concedes that the conclusions reached are without direct precedent. By reference to the laws and decisions of other states it is found that Michigan, Ohio, Utah, and Washington have statutes similar to our Auto Stage and Truck Transportation Act. The courts of last resort of those states, in construing their statutory provisions, have uniformly reached a conclusion opposed to the prevailing opinion (*Hissen* v. *Guran et al.,* 112 Ohio St. 59 [146 N. E. 808]; *Davis & Banker* v. *Metcalf,* 131 Wash. 141 [229 Pac. 2]; *State* v. *Nelson,* 65 Utah, 457 [238 Pac. 237]). The declaration of the supreme court of the United States in *Michigan Public Utilities Com.* v. *Duke,* 266 U. S. 570 [36 A. L. R. 1105, 69 L. Ed. 445, 45 Sup. Ct. Rep. 191], is directly in point. In that case Duke had employed seventy-five men and forty-seven motor-trucks as a private carrier under three private contracts for the transportation of automobile bodies from Detroit to Toledo. Under the Public Utilities Act of Michigan, which concededly is

essentially similar to our own Auto Stage and Truck Transportation Act, it was sought to subject Duke to regulation as a common carrier. The court said: "Moreover, it is beyond the power of the state by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no state can do consistently with the due process clause of the fourteenth amendment. (*Producers Transp. Co.* v. *Railroad Com.*, 251 U. S. 228, 230 [64 L. Ed. 239, 40 Sup. Ct. Rep. 131, see, also, Rose's U. S. Notes Supp.]; *Wolff Co.* v. *Industrial Court,* 262 U. S. 522, 535 [27 A. L. R. 1280, 67 L. Ed. 1103, 43 Sup. Ct. Rep. 630].) On the facts above referred to, it is clear that, if enforced against him, the act would deprive plaintiff of his property in violation of that clause of the constitution." The prevailing opinion attempts to distinguish that case from the one at bar on the ground that Duke's contracts were outstanding at the time the Michigan statute took effect and for that reason the statute was not applicable to him. The supreme court of the United States did not base its decision on the impairment of contract clause, but on the fourteenth amendment. Such in my opinion should be the conclusion reached in this case, that is to say, it should be decided that the petitioners, by reason of the act of the Commission, have been deprived of their property without due process of law, have been denied the equal protection of the law, and their private property has been taken for public use without just or any compensation. The order of the Railroad Commission should be annulled.