[S. F. No. 7614. In Bank.—December 14, 1916.]

## WESTERN ASSOCIATION OF SHORT LINE RAILROADS (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[S. F. No. 7641. In Bank.—December 14, 1916.]

## UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Petitioner, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

RAILROAD COMMISSION—LEGISLATURE CANNOT ABRIDGE CONSTITUTIONAL POWERS.—It is not within the power of the legislature, either by its silence or by direct enactment, to modify, curtail, or abridge the constitutional grant of power to the railroad commission over transportation companies.

ID.—TRANSPORTATION COMPANIES—MOTOR TRUCKS AND AUTOMOBILE STAGES—ROUTE WITHOUT LIMITS OF MUNICIPALITY.—Section 22 of article XII of the constitution, as amended in 1911, granting power to the railroad commission to establish rates of charges for the transportation of passengers and freight by railroads and "other transportation companies," confers regulatory powers on the commission over companies transporting freight or passengers for hire on the public highways by means of motor trucks or automobile stages, along routes not exclusively within the limits of a municipality.

APPLICATION for a Writ of Mandate directed to the Railroad Commission of the State of California.

The facts are stated in the opinion of the court.

William M. Abbott, William M. Cannon, Clarence M. Oddie, and Morrison, Dunne & Brobeck, for Petitioners.

Douglas Brookman, and Max Thelen, for Respondents.

HENSHAW, J.—Petitioner, Western Association of Short Line Railroads, is a corporation, organized to promote the best interests of the short, independent railroads, steam and electric, operating in the state of California and in other

states. Fifteen of such California railroads are members of this corporation. It made application to the respondent commission to regulate, within the law, the transportation business of the so-called Wichita Transportation Company, which company admitted that it was engaged as a common carrier in the business of transporting freight in motor trucks on the public highways of the state of California between the city of San Diego, in San Diego County, and the city of El Centro, in Imperial County, as well as to intermediate and other points in this state. The United Railroads of San Francisco, petitioner, made like request of respondent commission for regulatory orders governing the conduct of the Peninsula Company, and showed that petitioner was operating an interurban electric car line, extending from Fifth and Mission Streets, in San Francisco, to the city of San Mateo; it was so operating under franchises obtained from the proper authorities; that the Peninsula Company was regularly operating and maintaining a system of automobile buses, carrying from sixteen to twenty passengers each, running upon regular schedule from the point of departure of petitioner's cars in San Francisco to their terminus in San Mateo, and making return trips from San Mateo to San Francisco in like manner, and upon a route paralleling as closely as possible the line of the petitioner's electric railway; that in so operating they charged for the service the identical through fare charged by the petitioner, and similar lesser fares for intermediate points; that the Peninsula Company was a common carrier, a public utility and a transportation company within the meaning of the law, power to regulate which and the duty to regulate which were conferred by law upon the railroad commission.

The railroad commission declined to entertain these petitions, upon the ground that the law had not vested in it jurisdiction so to do. Mandate was then sought from this court, and the single question thus presented is that indicated: Does the constitution, or do the legislative enactments of the state, vest the power of regulation over such transportation companies in the railroad commission?

In denying these applications the railroad commission filed an elaborate opinion, in which the question of power was discussed under two heads. First, the question of the constitutional grant of power; second, the question of the legis-

lative grant of power. Application for mandate before this court was in the first instance denied, it appearing to the court that the commission had reached and expressed a satisfactory conclusion upon both propositions. Subsequently this alternative writ of mandate was issued for further consideration of the first proposition, namely, whether or not the constitution has conferred upon the commission regulatory powers over transportation companies such as have herein been described.

It is not and will not be questioned but that if the constitution has vested such power, it is not within the legislative power, either by its silence or by direct enactment, to modify, curtail, or abridge this constitutional grant. The language of the constitution in dealing with these very powers places this beyond peradventure when it declares (sec. 22, art. XII) that ''No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the railroad commission in this constitution." (See *Pacific Telephone & Telegraph Co.* v. *Eshleman,* 166 Cal. 640, 653, [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119].)

We agree with the construction placed by the commission upon the legislative enactments and with its conclusion that the legislature inadvertently failed or deliberately declined to make a specific grant of power to the railroad commission to regulate the affairs of these classes of transportation companies. We need not here repeat the convincing reasoning of the commission in this behalf, since doubtless its views will find expression in its own official reports, and it is sufficient for the purposes of this determination to express our concurrence in and with them.

We take up, then, the single consideration of the constitutional grant of power. It is found in section 22, article XII, of the constitution as it was amended in 1911. The section creates the railroad commission and defines its powers. In so doing it declares: ''Said commission shall have the power to establish rates of charges for the transportation of passengers and freight by railroad and other transportation companies, and no railroad or other transportation company shall charge or demand or collect or receive a greater or less or

different compensation for such transportation of passengers or freight, or for any service in connection therewith, between the points named in any tariff of rates, established by said commission, than the rates, fares and charges which are specified in such tariff." It is not questioned but that the Peninsula Company and the Wichita Transportation Company are public transportation companies, are common carriers, and are public utilities within the definition of section 23, article XII, of the constitution. As little will it be questioned but that if the quoted language of section 22 stood alone as a subject of construction it would be unhesitatingly held, in the present day, as it is held in construing similar language in other states, that it conferred upon the railroad commission regulatory powers over all transportation companies, therein including transportation companies of the classes under consideration. *Exempli gratia,* in *Georgia Railway & Power Co.* v. *Jitney Bus Co.,* the Georgia statute conferred jurisdiction upon the railroad commission over "all common carriers—railroads and express corporations or companies within this state," and its railroad commission held this to be a grant of power to regulate automobile buses and trucks carrying passengers and property for hire. (Public Utilities Rep. Ann. 1915C, see page 928.) Again the Illinois Public Utilities Commission had, under section 8 of that state's act, [Ill. Laws 1913, p. 464], been given "general jurisdiction over all public utilities," and a public utility was defined to be "every corporation that now or hereafter may own, etc., for public use any plant, equipment or property to be used for or in connection with the transportation of persons." Here, again, the Illinois Public Utilities Commission held this grant to confer upon it jurisdiction over such automobile passenger and freight carriers. (Public Utilities Rep. Ann. 1915, p. 853.) Therefore we repeat that one would have no hesitancy in declaring that the language of the constitution, in conferring upon the railroad commission power of regulatory control over "railroads and other transportation companies," embraced within its grant companies of the nature we are considering. And we interrupt our argument here to say that while the problem is to be resolved solely under the determination of the existence or nonexistence of the power in the railroad commission, no reason appears why such power should not have been conferred upon it, and mul-

titudinous reasons exist why it should have been conferred. These automobile stage companies carry passengers to great distances, over many and devious roads. It is a part of common knowledge that one may travel by this method at least from San Diego to Sacramento, and doubtless farther—a distance of over six hundred miles. Thousands of passengers are thus carried over mountains and plains. Aside from the mere matter of the regulation of fares, every consideration suggests the desirability, if not the need, of safety regulations touching the care and upkeep of the machines, the skill and prudence of the chauffeurs, etc. And touching the movement of freight, while in many instances these truck companies parallel railroads, in others they enter, unrestricted and uncontrolled, into new territory. Modern transportation has unquestionably reached the point where it is no more an answer to the farmer who thinks that the rates of the auto truck which passes his farm are extortionate, to say that he may haul his own product, than it would be to make him the same answer if he were complaining of a railroad extortion. And, moreover, it is not only a matter of common knowledge, but is presented in these cases, that in many instances these unregulated companies interfere seriously with the revenues of controlled public utilities, a percentage of whose revenues goes by way of taxes to the support of the state.

But returning to the fundamental questions: the nonexistence of the power in the railroad commission to supervise these corporations is found and declared by the railroad commission to rest upon the construction of the phrase, "other transportation companies," given to it by this court in *Board of Railroad Commrs.* v. *Market St. Ry. Co.,* 132 Cal. 677, [64 Pac. 1065]. It is said, and truly, that section 22, article XII, of the constitution, amended as it was in October, 1911, and embodying as it does the precise language contained in the section before amendment, will be held to have been amended and re-enacted in the light of the construction which this court had put upon that language. In 1901, section 22, so far as concerns the quoted language, stood identically as it does to-day. In that year the railroad commission made demand upon the Market Street Railway Company of San Francisco to produce its books, records, and papers, and submit itself to the regulatory powers of that commission as defined

by the act of 1880. (Stats. 1880, p. 45.) The Market Street Railway Company resisted this demand. The railroad commission brought action in the superior court to enforce it. The railway company prevailed and the commission appealed, contending that it was given authority by virtue of section 22, article XII, of the constitution. Before this court the question for determination was stated to be, "do the words *railroad and other transportation companies*' include a street railway company in a municipality engaged in the business of carrying passengers on street railroad cars?" This was the sole proposition presented to this court for determination. Mr. Justice Temple, in dissenting, held that from the context the meaning of "other transportation companies" was so plain as to deprive a court of the power to construe it. But the view of the majority of this court was that the words called for construction. So construing them this court held, for reasons not calling for repetition, as they are fully set forth in the opinion, that "other transportation companies" did not embrace within its meaning "street railway companies carrying passengers for hire within the municipal limits." But the decision, upon fundamental and familiar principles, decided nothing more than that this particular character of transportation company was not embraced within the purview of the language of the constitution. Thus it is said that the language of the constitution "is inconsistent with the idea that the entire people of the state (through the state railroad commission) were interested in the rates for carrying passengers within the corporate limits of a town or municipality"; and it is further declared, *arguendo:* "Companies engaged in draying, running freight-wagons, delivery-wagons, delivering parcels, teaming or running elevators, are engaged in the business of 'transportation'; but it surely could not be contended that they are subject to the jurisdiction of the 'railroad commission.' The people of the state would not have agreed to pay the salaries and expenses of the railroad commissioners, selected from different geographical sections of the state, for the purpose of regulating the charges of the 'United Carriage Company' of San Francisco. Yet it is a transportation company." This language is convincing in establishing the unquestioned fact that this court had in contemplation and was discussing transportation companies of whatsoever kind, operating exclusively within a municipality. And good reason

appears for this, because all such transportation companies were subject to license fees and police regulations imposable upon them by the municipal authorities.

All, therefore, that was actually decided in the Market Street case was that the Market Street Railway and other street railways of its character were not embraced within the meaning of the phrase "other transportation companies," as employed in the constitution. The most that was inferentially declared in the *obiter* above quoted was that other transportation companies operating wholly within the limits of a municipality were not within the contemplation of the constitution. Further than this the decision did not go, and further than this it should not be carried. It results, therefore, that the adjudication relied on by the railroad commission in no wise determines the question presented. That question is at large. It may be thus put: Did the constitution in the language quoted exclude by necessary or even by fair construction control over transportation companies of the character here presented? Assuredly nothing in the language of the grant excludes them, and no legitimate construction upon the phrase so oft quoted demands their exclusion. It must be and therefore is held that the constitution has granted regulatory powers over such corporations to the railroad commission by virtue of section 22, article XII, of the constitution, and it follows herefrom that mandate should issue to the railroad commission to exercise such powers.

"It is ordered that a peremptory writ of mandate issue to the railroad commission requiring the commission to make its order that the defendants in the proceedings referred to pending before said commission, viz.: the 'Wichita Transportation Company,' and the 'Peninsula Rapid Transit Company,' forthwith file with the commission their schedules of rates, fares, charges and classifications, and further that the commission assume the jurisdiction over these companies which is conferred by section 22, article XII, of the constitution."

Shaw, J., Melvin, J., Lorigan, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.