[S. F. No. 11456. In Bank.—April 27, 1925.]

FRANCHISE MOTOR FREIGHT ASSOCIATION et al., Petitioners, v. CLYDE L. SEAVEY et al., as Members of the Railroad Commission of the State of California, Respondents.

[1] Constitutional Law—Classified Legislation—Power of Legislature—Presumptions.—The authority and duty to ascertain the facts which will justify classified legislation rests in the first instance with the legislature, and every presumption is in favor of the validity of the legislative determination, and its decision as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary.

[2] Id.—Unlawful Discrimination—Privileges—Class Arbitrarily Selected.—A statute makes an improper and unlawful discrimination if it confers particular privileges upon a class arbitrarily selected from a larger number of persons all of whom stand in the same relation to the privilege granted and between whom and the persons not so favored no reasonable distinction or substantial difference can be found justifying the inclusion of the one and the exclusion of the other.

[3] Id.—Regulation of Motor-trucks on Highway—Purpose of.—The primary purpose of the regulation of common carriers engaged in the business of hauling various kinds of freight by motor-truck upon the public highways is to insure the adequacy, regularity, and reliability of service and the reasonableness of rates and charges therefor, and such regulation is for the benefit of the producing and consuming public.

[4] Id.—Auto Stage and Transportation Act—Exclusion of Certain Companies—Unlawful Discrimination.—The provision of chapter 310 of the Statutes of 1923, purporting to amend section 5 of the Auto Stage and Transportation Act of 1917, so as to exempt from regulations under the act transportation companies which are engaged exclusively in the movement of products or implements of husbandry and other farm necessities from farm to farm, or between farms and loading points, is an unwarranted

1. See 6 R. C. L. 384; 5 Cal. Jur. 815.
2. See 6 R. C. L. 377, 378; 5 Cal. Jur. 829.
4. See 6 R. C. L. 381; 5 Cal. Jur. 830.

discrimination and unconstitutional, as the classification provided in said act does not rest upon a constitutional distinction, nor is there any natural or intrinsic distinction as a basis for it.

(1) 12 C. J., p. 887, n. 37, p. 891, n. 77, p. 894, n. 12, p. 1130, n. 25.    (2) 12 C. J., p. 1130, n. 31; 36 Cyc., p. 992, n. 91.    (3) 12 C. J., p. 1117, n. 53.    (4) 12 C. J., p. 1117, n. 54; 36 Cyc., p. 994, n. 98.

APPLICATION for Writ of Mandate to compel the Railroad Commission of California to exercise jurisdiction over certain transportation companies.    Writ granted.

The facts are stated in the opinion of the court.

H. J. Bischoff for Petitioners.

Carl I. Wheat and Woodward M. Taylor for Respondents.

MYERS, C. J.—This is an application for a writ of mandate to compel the respondent Commission to assume and exercise jurisdiction over certain persons engaged in the business of transportation of property as common carriers for compensation over the public highways in this state between fixed termini or over regular routes, and to require such persons to cease operating until they shall have applied for and obtained from the respondent Commission certificates of public convenience and necessity therefor. The truck operators referred to are engaged exclusively in the movement of products or implements of husbandry and other farm necessities from farm to farm or between farms and loading points. There is no dispute as to the facts herein and the matter is submitted upon a general demurrer to the petition. The refusal of the respondent Commission to assume and exercise jurisdiction herein is predicated upon chapter 310, Statutes of 1923, purporting to amend section 5 of the Auto Stage and Truck Transportation Act of 1917 so as to exclude such persons from the regulations of said act. Prior to 1917 the Railroad Commission exercised no jurisdiction over transportation companies operating as common carriers of freight or passengers over the public highways by motor-stage or motor-truck. In December, 1916, this court held that under section 22 of article XII of the constitution, as amended in 1911, the Railroad Commission was vested with

the jurisdiction and the duty to regulate rates and charges of such carriers of freight and passengers by motor-truck; that this provision of the constitution could not be rendered nugatory by the omission of the legislature to prescribe procedural provisions for the carrying out thereof; and a peremptory writ of mandate was issued requiring the Railroad Commission to assume and exercise its jurisdiction over such carriers (*Western Association of Short ·Line Railroads* v. *Railroad Com.,* 173 Cal. 802 [1 A. L. R. 1455, 162 Pac. 391]). Thereupon the Auto Stage and Truck Transportation Act was enacted by the legislature to provide the procedural rules for the exercise of such jurisdiction. (Stats. 1917, p. 330.) The title of this act and certain sections thereof were amended in 1919 (Stats. 1919, p. 457). The term "transportation company," as used in the act, is defined in section 1 thereof to include "Every corporation or person . . . owning, controlling, operating or managing any automobile, jitney bus, auto truck, stage or auto stage used in the business of transportation of persons or property, or as a common carrier, for compensation, over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the limits of an incorporated city or town or of a city and county." (With certain exceptions not pertinent herein.) The validity of this definition of the term "transportation company," as used in the constitution, is not challenged or questioned by either of the parties hereto. The truck operators who are referred to in the petition herein are transportation companies within the meaning and purview of this definition and it is not questioned that under the provisions of this act as it existed from 1917 to 1923 they were subject to all of the regulatory provisions thereof. In 1923 section 5 of the act, which provided for the issuance of certificates of public convenience and necessity and forbade the operation by transportation companies upon the public highway without such certificates, was amended by adding thereto the following provisions: "Each application for a certificate of public convenience and necessity, . . . must be accompanied by a fee of fifty dollars; *provided, however,* the movement of products or implements of husbandry and other farm necessities from farm to farm or from and to farm to and from loading point, warehouse or other initial point shall

not be subject to the regulations of this act." (Stats. 1923, p. 644.) Since the passage of this amendment the Railroad Commission in obedience thereto has refrained from exercising jurisdiction over the transportation companies referred to therein and has declined to issue certificates of public convenience and necessity to such transportation companies or to require them to apply for and obtain such certificates (*In re Application of Geyer,* 23 Opinions and Orders of Railroad Commission, p. 865). The interest of the petitioners in this proceeding consists in the fact that they are themselves engaged in the business of transportation of property as common carriers for compensation operating over the same routes which are followed by the truck operators referred to in the petition. Petitioners are operating under certificates of public convenience and necessity obtained from the Railroad Commission, are subject to all of the regulations of the Commission, and by reason of the failure of the Commission to act in the premises petitioners are subjected to the unrestricted and unregulated competition of those other truck operators. Petitioners contend that the amendment of 1923 is violative of sections 11 and 21 of article I of the constitution of this state and of the fourteenth amendment to the federal constitution, in that it makes an arbitrary classification and distinction not based upon any natural, intrinsic, or constitutional ground of classification. In short, their contention is that the amendment which purports to exempt from the regulations of the act those transportation companies which are engaged in hauling the products and implements of husbandry constitutes an unreasonable, unjust and unlawful discrimination in favor of those transportation companies and against these petitioners. The respondents concede that the jurisdiction and power which is constitutionally vested in the Railroad Commission to regulate the rates of, to examine the books, records and papers of, and to hear and determine complaints against such transportation companies cannot be taken away or abridged by the legislature. They suggest, however, that the additional powers commonly exercised by the Commission, such as the power to issue certificates of public convenience and necessity, to regulate the accounts, service and safety of operations of transportation companies, to fix their classifications, rules and regulations, to require them to file re-

ports, to regulate the issue by them of stocks, bonds, etc., and the sale or transfer of certificates of convenience, etc., were conferred upon the Commission, not by the constitution, but by the legislature, and are therefore subject to withdrawal by the legislature which conferred them.

The question, therefore, is whether or not the exemption created by the proviso of 1923 constitutes a lawful classification. Concededly the classification here made does not rest upon a constitutional distinction, and some natural or intrinsic distinction must therefore be found as a basis for it. [1] It is well settled that the authority and duty to ascertain the facts which will justify classified legislation rests in the first instance with the legislature. Every presumption is in favor of the validity of the legislative determination, and its decision as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary (*Anastasion* v. *Superior Court,* 194 Cal. 93 [227 Pac. 762]; *People* v. *Monterey Fish Products Co.,* 195 Cal. 548 [234 Pac. 398]). [2] It is equally well settled that a statute makes an improper and unlawful discrimination if it confers particular privileges upon a class arbitrarily selected from a larger number of persons all of whom stand in the same relation to the privileges granted and between whom and the persons not so favored no reasonable distinction or substantial difference can be found justifying the inclusion of the one and the exclusion of the other (5 Cal. Jur. 825, and cases cited). What reasonable ground of distinction is there between a common carrier engaged in the business of hauling various kinds of freight, including products and implements of husbandry, by motor-truck over a regular route upon the public highway and another common carrier engaged in the business of hauling freight which consists solely of the products and implements of husbandry by motor-truck over the same route, which justifies the subjection of the one to the regulations imposed by the Auto Stage and Truck Transportation Act, and the exemption of the other from the burden of those regulations? The only basis for such a distinction which has been suggested to us is that a continuance of the development of the state demands that the cultivation and marketing of farm products be encouraged and assisted and that the intent of the legislature in making this

provision was the encouragement of the farmers to larger production and the assurance of accessibility of markets for that production, to the end that the products of the soil might be placed within the ready reach of all and their production fostered and assisted. This suggestion, as it seems to us, overlooks the main purpose of the regulation of rates and charges provided for in the constitution, and of the regulation of service, competition, safety provisions, issuance of' securities, etc., provided for in the act here in question. [3] It seems plain to us that the primary purpose of such regulation is to insure the adequacy, regularity, and reliability of service and the reasonableness of rates and charges therefor. Such regulation is for the benefit of the producing and consuming public. It follows that the exemption from regulation of those transportation companies engaged in hauling farm products and implements would be a detriment, rather than a benefit, to the farmers, as well as to the public generally, and would be of benefit' solely to the particular class of transportation companies so exempted. [4] Assuming, however, that the provision here in question was designed for the benefit of the farmers and that it may conceivably so operate, the weight of authority is to the effect that it is an unwarranted discrimination. A closely similar question came before the supreme court of the United States involving the validity of the Illinois Anti-Trust Law of 1893 [Ill. Laws 1893, p. 182], which prohibited a combination of capital, skill, or acts of two or more persons, etc., to create or carry out restrictions in trade, to limit production or increase or reduce prices or prevent competition, and which contained a proviso that ''The provisions of this act shall not apply to agricultural products or livestock while in the hands of the producer or raiser.'' That court, after an exhaustive consideration of the case, held the statute invalid solely upon the ground that the exception in favor of the farmers was an unreasonable and unwarranted discrimination, violative of the fourteenth amendment. In the course of its opinion the court observed, ''that if combinations of capital, skill or acts, in respect of the sale or purchase of goods, merchandise or commodities, whereby such combinations may for their benefit exclusively control or establish prices, are hurtful to the public interests and should' be suppressed, it is impossible to perceive why like combinations in

respect of agricultural products and live stock are not also hurtful.'' (*Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540 [46 L. Ed. 679, 22 Sup. Ct. Rep. 431, see, also Rose's U. S. Notes].) And so here it may be observed that if the regulation of transportation companies engaged in the business of hauling miscellaneous freight and commodities is helpful to the public welfare, it is impossible to perceive why like regulation in respect of transportation companies engaged in hauling products and implements of husbandry is not also helpful. The precise question here under consideration came before the federal courts under the so-called Lever Food Control Act which was enacted by Congress in 1917 (40 Stat. 276), ''to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel.'' That act, which was enacted as a war measure, made unlawful the destruction, waste, or hoarding of necessaries for the purpose of restricting the supply or increasing the price thereof. By its terms it was made applicable to all persons, but subject to the following provisos: ''Provided, that any storing or holding by any farmer, gardener, or other person of the products of any farm, garden, or other land cultivated by him, shall not be deemed to be a storing or holding within the meaning of this act: provided, further, that farmers and fruit growers, co-operative and other exchanges, or societies of a similar character, shall not be included within the provisions of this section.'' In the district court for the district of Indiana, the contention was made that the exemptions created by the provisos constituted an arbitrary and unlawful classification, violative of the due process clause of the fifth amendment, and that if enacted by a state legislature it would be equally violative of the like clause of the fourteenth amendment. In support of the act the contention was made there, as here, that the exemption of the farmers was justified upon the ground that it would promote the general welfare by stimulating them to greater production. That contention applied with much greater force to the situation then obtaining, with the nation involved in a great war, than it possibly could to the present situation. It was argued that Congress might well have determined that the safety of the nation depended upon the increased production and conservation of food supplies and

that the national welfare would be promoted by exempting the farmers from the drastic provisions of the act and thus stimulating them to increase their production. But the court held that the exemption was unreasonable, unjust, and wholly arbitrary and could not constitute a valid classification. Judge Anderson said: "The indulgence to the excepted class is in respect to the farm products produced or raised upon the land owned, leased, or cultivated by the members of it. But this does not differentiate the instant case from the Connolly case (184 U. S. 540 [46 L. Ed. 679, 22 Sup. Ct. Rep. 431, see, also, Rose's U. S. Notes]), for there the exception was to apply to 'agricultural products or live stock while in the hands of the producer or raiser.' My conclusion is that the classification in amended section 4 is arbitrary and not natural or reasonable; that such section is repugnant to the 'due process' clause of the Fifth Amendment, and is therefore void." He also held that the words "due process of law" must have the same meaning in the fifth and fourteenth amendments (*Hurtado* v. *California,* 110 U. S. 516 [28 L. Ed. 232, 4 Sup. Ct. Rep. 111, see, also, Rose's U. S. Notes]), from which it would follow that if the exception in the Lever Act is violative of the fifth amendment, the exemption in the Auto Stage and Truck Transportation Act would be equally violative of the fourteenth amendment (*United States* v. *Armstrong,* 265 Fed. 683). The same question came before the federal district court for the western district of Pennsylvania, and was decided in the same way, Judge Thomson saying: "Surely such classification is unjust and arbitrary in the extreme, violating both the letter and the spirit of the Fifth Amendment." (*United States* v. *Yount,* 267 Fed. 861.) The circuit court of appeals of the second circuit held the Lever Act constitutional as a war measure. Judge Manton in his opinion concluded that the exemption in favor of the farmers was not, under the circumstances then existing, so palpably arbitrary as to authorize a judicial review of the legislative judgment. It is to be noted, however, that Judge Manton's opinion cannot be regarded as the opinion of the court in that case. His associates concurred specially in separate opinions. Judge Ward based his concurrence upon the extraordinary powers vested in Congress for the maintenance of the national security in time of war. Judge Hough em-

phasized this by saying, "If we were in a state of 'official' peace, this statute would . . . be constitutionally obnoxious because it is a gross piece of class legislation; incapable of distinction from that condemned in *Connolly* v. *Union etc. Co.*, 184 U. S. 540 [46 L. Ed. 679, 22 Sup. Ct. Rep. 431, see, also, Rose's U. S. Notes]. But the statute is begotten by war, and is constitutionally excused (i. e., justified) by the war power, which is superior to, and not to be measured by, the police powers of the several states." (*C. A. Weed & Co.* v. *Lockwood*, 266 Fed. 785.) It may be noted in passing that this decision of the circuit court of appeals was in effect reversed by the supreme court, but upon other grounds, without passing upon the validity of the exemption in favor of the farmers (*C. A. Weed & Co.* v. *Lockwood*, 255 U. S. 104 [65 L. Ed. 532, 41 Sup. Ct. Rep. 305, see, also, Rose's U. S. Notes]). We do not mean to infer that every classification based upon a distinction between farmers on the one hand and all other persons on the other is unconstitutional, but we are impelled to conclude that no natural, intrinsic or constitutional distinction is to be found as a basis for the exemption of the transportation companies described in the 1923 amendment, *supra*, from the regulations prescribed in the Auto Stage and Truck Transportation Act, and that such attempted exemption is violative of the fourteenth amendment to the federal constitution and of like provisions in our state constitution. It is not claimed, and in view of the legislative history of the act could not be claimed, that the provisions of this exception are so intimately and inherently related to and connected with the general provisions to which it relates as to invalidate the latter.

It is ordered that a peremptory writ of mandate issue as prayed herein.

Waste, J., Shenk, J., Seawell, J., Lawlor, J., Lennon, J., and Richards, J., concurred.