Appellate Department, Superior Court, San Diego

[Crim. A. No. 126117.   Oct. 10, 1945.]

THE PEOPLE, Respondent, v. ABRAM STOLZOFF, Appellant.

[Crim. A. No. 126115.   Oct. 10, 1945.]

THE PEOPLE, Respondent, v. RUDOLF CASTRO, Appellant.

[Crim. A. No. 126116.   Oct. 10, 1945.]

THE PEOPLE, Respondent, v. ROBERT J. MAXWELL, Appellant.

Edgar Langford for Appellants.

Thomas Whelan, District Attorney, and A. D. Orme, Deputy District Attorney, for Respondent.

HAINES, P. J.—The three cases of *The People* versus *Stolzoff*, *The People* versus *Castro* and *The People* versus *Maxwell* are so similar in all of their essentials that they have been argued and submitted together and a rehearing having been granted, are now before this court.

The facts established by the evidence, so far as Stolzoff is concerned, were in brief that on the day involved he had an automobile, described as a station wagon, in front of the gate at Camp Elliott, a cantonment outside the corporate limits of the city of San Diego, that he accepted passengers for transportation to San Diego, waiting until he had a full load, which included three sailors, two "waves," and a soldier; that he proceeded with them into the city and had gotten to the neighborhood of Sixth Avenue and Date Street, when he was stopped by two policemen who required his

passengers to alight; that from each passenger he at that time asked and received a fare of $1.00. He had a license issued by the State Board of Equalization under section 9701 (See also section 10501) of the Revenue and Taxation Code, to transport passengers for hire upon public highways in this State but had neither applied for nor obtained a certificate of public convenience from the Railroad Commission. He was placed under arrest and the present prosecution instituted. ■ We presumably can take judicial notice that the direct route between Camp Elliott and the central areas of the city of San Diego is over Highway 395, referred to in the complaint.

■ It is not claimed, nor can it be, that the possession of such a license from the State Board of Equalization is exclusive of the necessity of securing also from the Railroad Commission a certificate of public convenience in cases where such certificates are required by the Public Utilities Act. The requirement of the license from the Board of Equalization is for purposes of revenue, whereas the requirement of the certificate of public convenience is a regulatory measure (*Motor Transit Co.* v. *Railroad Commission*, 189 Cal. 573, 580 [209 P. 586] ; *In re Bush*, 6 Cal.2d 43, 51 [56 P.2d 511]. See also *In re Galic*, 40 C.R.C. 555, 563.)

In the Stolzoff case it is charged that "the crime of violation of Act 6386 of the General Laws of the State of California and particularly section 50¼ thereof has been committed by the defendant as follows: "That said Abram Stolzoff on or about the 21st day of April 1945, in San Diego Township in the said County of San Diego, State of California, and before the making or filing of this complaint, did then and there wilfully and unlawfully engage in the transportation of passengers as a passenger stage corporation upon a public highway of the County of San Diego, State of California, to wit: Highway 395, without first having obtained from the Railroad Commission of the State of California a certificate declaring that the public convenience and necessity require such operation, as provided in section 50¼ of said Act.''

■ Manifestly, the first inquiry necessary in measuring the defendant's acts by the statute is to determine what is meant by a "passenger stage corporation." According to section 2¼(a) of the act, the term "passenger stage" includes "every stage, auto stage or other motor vehicle, used

in the transportation of persons, or persons and their baggage or express, or persons or baggage and express, when such baggage or express is transported incidental to the transportation of passengers." "Passenger stage corporation" is defined by section 2¼(b) of the act to include "every corporation, or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever engaged as a common carrier, for compensation, in the ownership, control, operation or management of any passenger stage over any public highway in this state between fixed termini or over a regular route: provided, however, that this term shall not include those whose operations are exclusively within the limits of a single incorporated city, town or city and county, or whose operations consist solely in the transportation of bona fide pupils attending an institution of learning between their homes and such institution of learning."

According to section 2¼(c) of the act: "The words 'between fixed termini or over a regular route,' . . . mean the termini or route between or over which any passenger stage corporation usually or ordinarily operates any passenger stage, even though there may be departures from said termini or route, or such departures be periodic or irregular."

It will be noted that to constitute a "passenger stage corporation," the corporation, person or other agency involved must be acting as a "common carrier." Section 2¼(d) of the act purports to define the term "common carrier" as including "in addition to the definition herein otherwise given" every "passenger stage corporation." To say, however, that certain activities "as a common carrier" constitute one "a passenger stage corporation" and in the same breath to define the term "common carrier" as being a "passenger stage corporation," is merely to proceed in a circle. Nor is any "definition herein," that is in the act, "otherwise given" applicable. Certain other activities are in section 2(l) and again in section 2¾ of the act described as constituting those who engage in them "common carriers" but the situations there specified are different from any in which passenger stages are involved. It must, however, be assumed that the Legislature intended the term "common carrier" as employed in section 2¼(b) to have some meaning and for want of any clear definition in the act itself of what, in this particular connection, it does mean, it would appear proper to turn to dictionary definitions. "Common carriers" of passengers are defined in

Black's Law Dictionary (3d ed., p. 283 under "Carriers") as: "Such as undertake for hire to carry all persons indefinitely who may apply for passage, so long as there is room, and there is no legal excuse for refusing."

If this definition, then, be applied to the use of the expression "common carrier" as employed in section $2\frac{1}{4}$ (b) of the act, the result is, for the purpose of the present discussion, to render intelligible the definition given in the section of the term "passenger stage corporation."

Turning now to the specific section of the act which the defendant is charged with violating, to wit, section $50\frac{1}{4}$, it appears that, with certain exceptions not material here, passenger stage corporations are forbidden to operate over the public highways without having obtained certificates of public convenience from the Railroad Commission.

This leaves to be decided in the Stolzoff case the question whether proof of the facts recited establishes any violation of section $50\frac{1}{4}$ of the Public Utilities Act; in other words, whether the activities shown on the part of the defendant Stolzoff amount to acting as a passenger stage corporation, and, if so, were such as were forbidden in the absence of any certificate of public convenience. There are three arguable standpoints from which this question may be discussed, namely, the position taken by the People, that taken by counsel for the defendant, and a position intermediate between the two.

Counsel for the People direct our attention to the circumstance that by section $50\frac{1}{3}$ of the Public Utilities Act, a violation of section $50\frac{1}{4}$ thereof by a passenger stage corporation is made a public offense, punishable by fine or imprisonment, or both; that the general jurisdiction over public offenses and, except in the case of certain contempts, the only jurisdiction to impose penalties by way of fine or imprisonment therefor, rests in the courts; and as respects the sufficiency of the proof, that it is provided by section $50\frac{1}{4}$ of the act that:

"Any act of transporting or attempting to transport any person or persons by stage, auto stage, or other motor vehicle upon a public highway of this State between two or more points not both within the limits of a single incorporated city, town or city and county, where the rate, charge or fare for such transportation is computed, collected or demanded on an individual fare basis, shall be presumed to be an act of operating as a passenger stage corporation within the meaning of this act."

As respects the matter of fixed termini, it is urged that Camp Elliott is shown to have been the one terminus of the transportation furnished by Stolzoff and the city of San Diego the other, and that this is a sufficient designation of termini and that it is unnecessary that any depot or other more specific place within the city of San Diego should have been designated as a terminus. To that effect reliance is placed on the case of *State* v. *Mercer*, 215 Iowa 611 [246 N.W. 406], in which transportation by motor truck between the cities of Burlington and Keokuk, both in the State of Iowa, was held by the Supreme Court of that state to have been transportation between fixed termini; and various determinations of the Railroad Commission of California have been cited in which cities as such, rather than points within given cities, were, though without any specific discussion of the point, treated as being fixed termini within the meaning of the Public Utilities Act (see e. g. *Allen* v. *Moyles*, 22 C.R.C. 564; *Richardson* v. *McKelverry*, 22 C.R.C. 584 and *McConnaha* v. *Willhite*, 24 C.R.C. 579). A contention that operations between two cities, in neither of which was any depot maintained, were not between fixed termini was rejected in *Holmes* v. *Railroad Commission*, 197 Cal. 627, 639-641 [242 P. 486].

It is claimed therefore, that the showing made, even though only one trip between the termini involved was actually proved, amounts to a complete justification of the action of the municipal court in finding Stolzoff guilty of the offense charged.

The argument evoked a discussion of the provisions of section 50¼ of the act to the effect that upon the filing with the commission of a complaint that, in violation of the act, any passenger stage is being operated without a certificate of public convenience and necessity, the commission may order the operator to desist from so doing until a decision shall have been made upon the complaint or until the commission's further order and of the further provision of the same section that:

''Whether or not any stage, auto stage, or other motor vehicle is being, or is proposed to be operated as a passenger stage corporation 'between fixed termini or over a regular route' within the meaning of this act shall be a question of fact, and the finding of the Railroad Commission thereon shall be final and shall not be subject to review.''

The position of counsel for the People as to these provisions was that the powers with which the commission is thus in-.

vested are not exclusive, that the question whether the operator of any stage or other motor vehicle is operating the same as a "passenger stage corporation 'between fixed termini or over a regular route'" within the meaning of the act may properly be a subject of plenary investigation in a criminal case before the courts, or, in the alternative, in an investigation between the Railroad Commission under the power conferred by the above provisions of section 50¼ of the Public Utilities Act, or, independently, both by the courts and by the commission; that in case the prosecution is instituted in the courts it is their duty to determine this question themselves without awaiting or regarding any determination of it by the commission; whereas, if, in the alternative, an investigation of it as an administrative matter is instituted by or before the commission, then and then only does the situation arise in which the finding of the commission is final and not subject to review and that, even so, such finality only exists for the purpose of such administrative determination. We understand counsel to go so far as to claim that if both criminal proceedings before the courts and administrative proceedings before the commission are instituted, the determination of neither tribunal is binding on the other and that even though different conclusions are reached, such diverse results are no grounds for complaint.

By contrast the positions taken by counsel for the defendant are two, first, that the provisions last referred to of section 50¼ of the act give to the commission the exclusive power to determine whether or not a corporation, natural person or other agency, is in fact operating a stage or other motor vehicle "as a passenger stage corporation between fixed termini or over a regular route"; that until the commission has acted on the matter and affirmatively found such operation as a fact and directed that the operator desist therefrom, no criminal prosecution lies therefor in the courts, and, second, that the question of what are fixed termini depends upon a reasonable appraisement of the facts in any given case, and that, while in long distance transportation, as e. g., between San Francisco and Los Angeles, it may be reasonable to treat the designation of the respective cities as designations of fixed termini, yet when the city is a large one and the transportation involved is in its nature local, as from some nearby point outside the city limits as one terminus, it should be held insufficient to merely designate the city, without specifying any

particular point within the city as the other terminus. Of these two contentions it may be observed that the first, if carried to its logical conclusion, would amount to claiming that the complaint here fails to state a public offense at all, in that it fails to state that the commission has adjudged the case to be one in which a certificate of public convenience is required and fails to state that the commission has required the defendant to desist from his operations until such certificate shall be granted.

The third position, intermediate between that taken for the People and that taken for the defendant, would be that the jurisdiction of the commission over the subject is not necessarily exclusive; that the courts may entertain criminal proceedings based on operations alleged to be by passenger stage corporations contrary to the terms of the act, and at least until the commission has, pursuant to the authority given under section 50¼ of the act, determined in a particular case that an operator of a motor vehicle is not acting as a passenger stage corporation, or at all events until the commission has before it some proceeding involving the question, that the courts may investigate independently all questions of fact necessary to the determination of complaints before them. There would be, in this view of the situation, nothing inconsistent with the conclusion reached by the municipal court here, though it would still leave open for decision such questions, for example, as whether or not the courts are bound by the presumption from one act of transportation that an operator is regularly engaged therein, and whether or not the designation of the city as a terminus is necessarily or, in a given case, sufficient.

In two, at least, of its features the position taken by counsel for the People appears to be well supported. There seems to be no reason why the presumption above quoted from section 50¼ of the Public Utilities Act making proof of one trip between given points with passengers who are charged individual fares, evidence of a practice of making such trips, should not be given effect. True, the presumption of innocence is often said to be the strongest presumption known to the law. That can hardly be an accurate statement, however, for there are conclusive presumptions and the presumption of innocence is not one of them, but is not only rebuttable but actually rebutted each time there is a valid conviction after a plea of not guilty. It being, then, a rebuttable presumption, it is clear that it may be rebutted by any compe-

tent evidence. Competent evidence may be direct or indirect, the latter of which classes includes presumptions. While ordinarily the presumption of innocence prevails over other rebuttable presumptions (see 10 Cal.Jur. 754-755 and cases cited) the presumption of sanity has been held to prevail over that of innocence (*People* v. *LeDoux*, 155 Cal. 535, 553 [102 P. 517]). It is, moreover, not unusual for legislation to declare that the proof of certain facts shall be evidence of other facts even though the latter, when established, amount to crimes. For example, in *People* v. *Scott*, 24 Cal.2d 774 [151 P.2d 517], there was involved a provision of the "Dangerous Weapon Control Act of 1923" (Stats. 1923, p. 702, Deering's General Laws, Act 1970) making possession of a firearm, the marks of identification whereof have been tampered with, prima facie evidence that the tampering, which is a public offense, was done by the possessor. Whether the creation and using of such a presumption, in view of the provisions of the Fourteenth Amendment to the federal Constitution, is permissible on the one hand, or amounts to a violation of the due process clause thereof on the other, is held to depend ultimately on the question whether there is, in a given instance, a rational connection between the fact proved and the fact presumed. An extended discussion of the subject will be found in *People* v. *Scott, supra,* pages 774, 779-783. We deem it unnecessary to enlarge further upon that feature of the case except to observe that we are unable to say that there is no rational connection between the making of one trip in which passengers are charged individual fares, and the likelihood that such trip is one of a series. It may, however, be added, that in the instant case in addition to proof of making the trip, giving rise under the statute to the presumption, there is added the fact that defendant did have the license from the Board of Equalization referred to, from which it might at least be legitimately inferred that he was transporting passengers as a business.

As to the question whether the designation of Camp Elliott on the one hand and San Diego on the other is a sufficient designation of fixed termini, it being conceded by defendant's counsel that all which is required is a designation, reasonable in the circumstances of a particular case, it would seem that the sufficiency of a particular designation is primarily for the trial court and that, unless its determination of the matter is manifestly an arbitrary and unreasonable

one, it is not our function to interfere with it. The municipal court may here have legitimately concluded that, in offering to transport passengers to San Diego, the defendant meant to offer and was understood to be offering to transport them to the general area constituting the central part of the city, and that that designation was enough. There would seem to be no sufficient reason for disturbing its conclusion on that subject.

This leaves for determination only the central question in the case, going to the respective functions of the courts and the commission. It must be apparent that the contention of counsel for the People in its extreme form cannot be upheld. The idea that there can be two parallel and continuing jurisdictions, one in the courts of law, and the other in the commission administering a separate and distinct *droit administratif*, and that such jurisdictions can be, not only different in their processes, but potentially in their results, with neither under any obligation to submit to the determinations of the other, and each oblivious of positions taken by the other, can hardly have been contemplated either by the state Constitution or in the Public Utilities Act. Whatever the basis of coordination between the jurisdictions may be, it is apparent that there must be one.

If this construction of the statute be rejected, then, is the alternative suggested by counsel for the defendant to be adopted? It presents obvious difficulties. Let it be supposed that in some particular case the facts are actually such as to bring the operator of a passenger stage within the meaning of the term "passenger stage corporation"; also that he in fact is operating stages upon the public highways of the state and is not within any of the exceptions to the inhibition contained in section 50¼ of the Public Utilities Act against so operating without a certificate of public convenience and that he has no such certificate. He would then appear, if we have reference only to the first paragraph of said section 50¼, to be an undoubted violator of the provisions thereof and any such violation by a "passenger stage corporation," which, as we saw may be an individual and need not necessarily be a body corporate, is by section 50⅓ specifically made a crime. For all of that, it must follow, from the position of defendant's counsel, that such conduct on the part of such operator, although apparently denounced in terms by the act, cannot be punished as a crime until or unless the commission

has specifically forbidden its continuance either tentatively or by a final decision. In other words, it is not a crime until the commission has in effect declared it such or, if it is a crime, then it is a crime which, until the commission has in effect declared it such, no court is competent to punish. Until and unless the commission deals with the case, according to counsel's contention, the operator can continue with impunity without fear of punishment, however flagrant and repeated may be his seeming transgressions of the terms of the act.

▉ It seems patent that such an interpretation also must be rejected and that the solution must be sought in some *via media*. We are not, however, called upon in the instant case, to decide what the effect on the present prosecutions would have been had the commission's jurisdiction been invoked by complaints filed with it against the defendants prior to the trials in the municipal court, or had it, on its own motion, taken jurisdiction, or had it, either on such complaints or on its own investigation, specifically determined that the defendant's status and conduct either were or were not such as to bring them within the inhibitions of the Public Utilities Act. In the instant case it does not appear that the commission has acted or entered upon any investigation or, if indeed its determination has been sought, that any formal complaint has been filed with it. In these circumstances all we need to decide is whether or not, in the absence of any proceeding before it or action by it, any impediment exists to the full determination in the courts of criminal charges initiated by complaints filed with them alleging violations of the act and specifically the doing of what is forbidden in the first paragraph of section $50\frac{1}{4}$ thereof.

Section 72 of the act makes it the duty of the commission to see that the violations of the act are "promptly prosecuted" and goes on to provide that:

"Upon the request of the commission, it shall be the duty of the attorney general or the district attorney of the proper county or city and county to aid in any investigation, hearing or trial had under the provisions of this act, and to institute and prosecute actions or proceedings for the enforcement of the provisions of the Constitution and statutes of this state affecting public utilities and for the punishment of all violations thereof."

Manifestly this contemplates the institution and prosecution of such proceedings in the courts.

Section 75 of the act in terms authorizes the commission to itself bring either mandamus proceedings or equity suits in the superior courts to remedy or prevent violations, actual or threatened, of the act or of its own orders and the right of the courts to entertain such suits and afford the relief sought was sustained by the Supreme Court in *Motor Transit Co.* v. *Railroad Commission*, 189 Cal. 573 [209 P. 586].

Not only, however, is it thus competent for law enforcement officers, under the direction of the commission (pursuant to § 72) to maintain in the courts proceedings, either criminal or civil, for the enforcement of the Public Utilities Act and other provisions of law affecting utilities which are subject to the commission's regulations; and for the commission in its own name (pursuant to § 75) to maintain in the courts civil actions for that purpose; but both civil and criminal proceedings in the courts against those accused of violating the act or of violating cognate acts have been sustained in the absence of any direction or action by the commission. (See e. g., with respect to civil suits, *Truck Owners' etc. Incorporated* v. *Superior Court*, 194 Cal. 146 [228 P. 19], involving violation of the Auto Stage Transportation Act, Stats. 1917, p. 330, and *Miller* v. *Railroad Commission*, 9 Cal.2d 190 [70 P.2d 164, 112 A.L.R. 221], involving the Public Utilities Act.) As respects criminal proceedings, the leading case in this state is *In re Marriott*, 218 Cal. 179 [22 P.2d 692]. There the petitioner was confined upon certain criminal complaints in one of which he was charged with operating a passenger stage, as a passenger stage corporation, over the public highways without having obtained a certificate of public convenience from the Railroad Commission, in violation of section 50¼ of the act. There is no suggestion in the decision that the case had ever been before the Railroad Commission or that the commission had decided that the petitioner was in fact operating as a passenger stage corporation or had either granted or refused a certificate of public convenience. He sued out a writ of habeas corpus claiming that even though he were so operating, since the punishment denounced for the violation of the act by a corporation was, according to section 76a of the act, only a fine (the prosecution having apparently been instituted prior to the effective date of the present section 50⅓), that he was subject only to the penalty of a fine "collectible in a court action conducted by the Railroad Commission in the exercise of its exclusive jurisdiction in

the regulation of public utilities.'' The Supreme Court, however, said (p. 181):

''There is no merit in this contention. The commission has jurisdiction to issue cease and desist orders, institute contempt proceedings, collect fines pursuant to section 80 and to otherwise exercise the authority conferred upon it by said act. But in addition, the express terms of respective sections make the violation thereof a criminal offense, such as a misdemeanor (sec. 28d) or a felony (sec. 52f). The concluding sections of the act, general in scope, provide penalties in all cases not covered by prior provisions (sec. 76 et seq.). Thus the sections relied upon by petitioner furnish the procedure for penalizing a public utility through imposition of a fine (sec. 76), which may be collected in a civil action by the attorney for the commission in the name of the people of the state (sec. 80). Similarly, section 78 applies to corporations other than public utilities. Section 77, however, applies to individuals and provides: 'Every officer, agent or employee of any public utility, who violates . . . this act . . . is guilty of a misdemeanor . . . punishable by . . . fine . . . or . . . imprisonment . . . or both. . . .' We see no reason why the complaints here in question do not properly state a criminal offense punishable under the above section.''

As has been observed, section 50⅓ of the Public Utilities Act now (since its enactment in 1933) in specific terms makes the violation of section 50¼ a crime.

Authorities from other states in which the courts have taken jurisdiction in proceedings, sometimes civil and sometimes criminal, to deal with violation of acts analogous to our Public Utilities Act, in advance of action by the regulatory body to which the enforcement of the act has been primarily confided, are, in Virginia, *Turner* v. *Hicks,* 164 Va. 612 [180 S.E. 543], and in New York, *Brooklyn City Railway Co.* v. *Whalen,* 191 App.Div. 737 [182 N.Y.S. 283]; *People ex rel. Weatherwax* v. *Watt,* 115 Misc. 120 [188 N.Y.S. 559] and *People* v. *Speciale,* 249 App.Div. 766 [292 N.Y.S. 23]. (Reversed on other grounds in 273 N.Y. 413 [7 N.E.2d 840]).

There is in California a fairly large body of expression concerning the respective functions of the courts and the commission in the enforcement of the Public Utilities Act (see *inter alia* in addition to the cases above cited, *Stratton* v. *Railroad Commission,* 186 Cal. 119 [198 P. 1051]; *Holmes* v. *Railroad Commission,* 197 Cal. 627 [242 P. 486]; *Haynes*

v. *McFarlane,* 207 Cal. 529 [279 P. 436]; *Motor Freight Terminal Co.* v. *Bray,* 217 Cal. 242 [18 P.2d 62], and *City of Oakland* v. *Key System,* 64 Cal.App.2d 427 [149 P.2d 195]). Suffice it here to say that none of these decisions, when considered in connection with the facts involved in them, afford any reason to doubt the jurisdiction of the municipal court in such cases as those before us now. The two cases entitled *In re Martinez,* 22 Cal.2d 259 [138 P.2d 10] and 56 Cal.App. 2d 473, 477 [132 P.2d 901], involving taxicabs have been relied on by appellants here as indicating that their obligations are wholly outside the purview of the Public Utilities Act, but the activities involved in them were wholly within the limits of a single incorporated city and accordingly the operators were expressly excluded from the category of passenger stage corporations by subdivision b of section 2¼ of the act itself. These cases therefore are not here in point.

The development of administrative law in recent years both in the several states and even more particularly in the field of federal jurisprudence, has undoubtedly been one of the most notable phenomena of government. It has been implemented by many statutes purporting to invest administrative bodies with fact finding powers and to make such determinations of fact when made by them final. There are many judicial expressions such, e. g., as that by Mr. Justice Douglas, in *Sunshine etc. Coal Co.* v. *Adkins,* 310 U.S. 381 [60 S.Ct. 907, 84 L.Ed. 1263], to the effect that "when . . . Congress has created a special administrative procedure for the determination of the status of persons or companies under a regulatory act and has prescribed a procedure which meets all the requirements of due process that remedy is exclusive." All such expressions, however, must be understood in connection with the facts which lead to their utterance. Our attention has not been directed to any case, state or federal, wherein, in circumstances similar to those of the cases at bar the courts have been held incompetent to entertain criminal complaints.

In the foregoing discussion the Stolzoff case has been specifically dealt with as typical of all three before us. As respects the question of fixed termini, we may add, as applicable to the Castro and Maxwell cases, the remark that in *Sutherland* v. *Kitto,* 33 C.R.C. 58, the Railroad Commission held that the operation of stages between San Ysidro and the International Boundary line, which are the same limits

involved in the Castro and Maxwell cases, amounted to an operation between fixed termini.

The judgment is affirmed.

Thompson, J., concurred.

BURCH, J.—I dissent. I think the conviction of the defendants should be reversed, as was decided by the court on the original hearing. I will say a few words in amplification of the opinion there rendered.

The majority opinion on rehearing sufficiently and correctly sets out the facts. I agree, too, that the first inquiry is to measure the defendants' acts by the appropriate statutes and to this end we should discover the meaning of the term "passenger stage corporation." I wholly disagree with the reasoning and the construction adopted by the majority to this end. It is true that the term was brought into the statutes by the 1927 amendments to the Public Utilities Act, that is, sections $2\frac{1}{4}$ and $50\frac{1}{4}$ thereof, but a little history will demonstrate that though the name is new, the subject is old. I hope to show that the phrase "passenger stage corporation" is the "transportation company" referred to in section 22 of article XII of the Constitution of 1879, again referred to in the amendments of 1911, the two constitutional provisions in that regard being identical, that is to say, the Railroad Commission was given the power and the duty to establish rates of charges "for the transportation of passengers and freight by railroads and *other 'transportation companies.'*" The case of the *Railroad Commissioners* v. *Market Street Railway Co.*, 132 Cal. 677 [64 P. 1065], decided that the commissioners were without jurisdiction over the street railways operated in a municipality. The holding of the Supreme Court was that "a street-railway company was not a transportation company within the meaning of section 22 of article XII of the Constitution, defining the powers and duties of the Board of Railroad Commissioners which are intended to be confined to corporations carrying freight and passengers from one portion of the state to another . . . and not to include local street railways carrying passengers only within the limits of a city." The case further held, which is important to us, that "although the legislature cannot authoritatively fix the meaning of the constitution, yet where the meaning of the constitution is doubtful, the

contemporaneous and long-continued construction thereof by the legislature is entitled to the greatest deference, and may be supposed to reflect the same views of policy and modes of reasoning which prevailed among the framers of the constitution.''

The next case in our short history is *Western Association of Short Line Railroads* v. *Railroad Commission*, 173 Cal. 802 [162 P. 391, 1 A.L.R. 1455]. This case, decided in December, 1916, held that it was not within the power of the Legislature either by its silence or by direct enactment to modify, curtail or abridge the constitutional grant of power to the Railroad Commission over transportation companies and further, that section 22 of article XII of the Constitution as amended in 1911 granted power to the Railroad Commission to establish rates of charges for the transportation of passengers and freight by railroads and ''other transportation companies'' and that that section confers regulatory powers on the commission over companies transporting freight or passengers for hire on the public highways by means of auto trucks or automobile stages along routes not exclusively within the limits of the municipality.

We will next consider for present purposes the case of *Franchise Motor Freight Association* v. *Seavey*, 196 Cal. 77 [235 P. 1000]. This case narrates the history of the development of the law to the year 1925 insofar as it was regulatory of common carriers of freight and passengers by motor truck. This stated:

''In December, 1916, this court held that under section 22 of article XII of the constitution, as amended in 1911, the Railroad Commission was vested with the jurisdiction and the duty to regulate rates and charges of such carriers of freight and passengers by motor-truck; that this provision of the constitution could not be rendered nugatory by the omission of the legislature to prescribe procedural provisions for the carrying out thereof; and a peremptory writ of mandate was issued requiring the Railroad Commission to assume and exercise its jurisdiction over such carriers (*Western Association of Short Line Railroads* v. *Railroad Com.*, 173 Cal. 802 [162 P. 391, 1 A.L.R. 1455]). Thereupon the Auto Stage and Truck Transportation Act was enacted by the legislature to provide the procedural rules for the exercise of such jurisdiction (Stats. 1917, p. 330). The title of this act and certain sections thereof were amended

in 1919 (Stats. 1919, p. 457). The term 'transportation company,' as used in the act, is defined in section 1 thereof to include 'Every corporation or person . . . owning, controlling, operating or managing any automobile, jitney bus, auto truck, stage or auto stage used in the (business of) transportation of persons or property, (or) as a common carrier, for compensation, over any public highway in this state between fixed termini or over a regular route, and not operating exclusively within the limits of an incorporated city or town or of a city and county.' (With certain exceptions not pertinent herein.) "

The words I have put in parentheses were the additions of the amendment of 1919 to the Auto Stage and Truck Transportation Act. The quotation without these words in parentheses states the section as enacted in 1917. At this point we may properly turn to the 1927 additions of sections $2\frac{1}{4}$ and $50\frac{1}{4}$ of the Public Utilities Act. Section $2\frac{1}{4}$ thereof in its various subdivisions a, b, c and d, defines our old friend, the "transportation company" under a new name, "passenger stage corporation" with this possible exception: a "passenger stage corporation" emphasizes the carrying of passengers and express or baggage, whereas the Constitution in 1879, again in 1911, and the Transportation Act of 1917 adheres to the term "transportation of passengers and freight." All of them, however, refer to common carrier operation upon the public highways of the state of a character as pointed out in the case of the Market Street Railway Company, *supra*, which was of statewide concern.

One more point must be clarified. The legislation of 1917 was deemed to be valid and as I have indicated, it was nothing more than the legislative provision of procedural rules for the exercise of jurisdiction granted the commission by the Constitution. (*Western Association of Short Line Railroads* v. *Railroad Commission, supra*.) That is to say, it afforded the operative machinery for the exercise of the commission's powers over common carriers upon the highways by motor vehicle. The amendment of 1919 undertook to regulate and supervise the business of transportation on the highways other and in addition to that transacted by common carriers. The Supreme Court of the United States in *Frost* v. *Railroad Commission*, 271 U.S. 583, 589 [46 S.Ct. 605, 70 L.Ed. 1101], holding that the use of the highways was a constitutional privilege of the citizens and in the case of the private car-

rier not subject to regulation as a public utility, decided that the Auto Stage and Truck Transportation Act as amended in 1919 was repugnant to the 14th Amendment to the federal Constitution. This decision was rendered in 1926. Such was the situation which faced the Legislature when sections 2¼ and 50¼ were added in 1927 to the Public Utilities Act. This short history explains the enactment of sections 2¼ d and 2¼ b and shows why a public utility now for the first time called a "passenger stage corporation" is a common carrier. In the light of the above considerations, then, section 2¼ by its own terms renders intelligible the definition given in the section of the term "passenger stage corporation." Common carriers operate some on water, some on railroad tracks, some in the air and some on highways. The jurisdiction of the commission is limited to common carriers. The scope and purpose of sections 2¼ and 50¼ is the regualtion of those common carriers operating by motor vehicle upon the highways carrying passengers and baggage.

In the light of these considerations it further appears that the passenger stage corporation is a public utility; is a common carrier and is in fact a transportation company under the regulatory power of the Railroad Commission by virtue of the state Constitution but it is also apparent that the Legislature in the 1927 enactment has not seen fit to incorporate in the Public Utilities Act the common carriers of freight, but as I have indicated, concerned itself only with such freight as was incident to the transportation of passengers.

Now we may consider what the "passenger stage corporation" is not. It is not a taxicab. (*In re Martinez*, 22 Cal.2d 259 [138 P.2d 10].) It is not a transportation company of purely local interest. (*Railroad Commissioners* v. *Market Street Railway Co.*, 132 Cal. 677 [64 P. 1065].) It is not a private carrier. In a word it is a public utility transporting passengers on the highways in a manner intended by sections 22 and 23 of article XII of the Constitution for regulation as of statewide concern. Section 23 of article XII grants to the Legislature authority to confer powers upon the Commission in addition to the direct constitutional grant, which conferred powers are consistent with those constitutionally granted. This brings us to the third paragraph of section 50¼ of the Public Utilities Act, the same substantially as

section 1 of the 1917 legislation creating the Auto Stage and Truck Transportation Act. That is to say, the Legislature has by the second and third paragraphs conferred powers upon the commission to make findings of fact which are conclusive as to what common carriers operating by motor vehicle upon the highways in the transportation of passengers as common carriers are in fact common carriers, and also has provided it with all the requirements of due process as in according a fair hearing and acting upon evidence and not arbitrarily but only in a limited and confined field. In so doing the Legislature is making a proper exercise of its own powers. This will appear from a quotation from *Southern Pacific Co.* v. *Railroad Commission*, 13 Cal.2d 89, at page 108 [87 P.2d 1055], as follows:

"In the case entitled *American Toll Bridge Co.* v. *Railroad Commission*, 12 Cal.2d 184 [83 P.2d 1, 4], this court quoted from the case of *St. Joseph Stock Yards Co.* v. *United States*, 298 U.S. 38 [56 S.Ct. 720, 80 L.Ed. 1033], wherein it was said: . . . 'Exercising its rate-making authority, the legislature has a broad discretion. It may exercise that authority directly, or through the agency it creates or appoints to act for that purpose in accordance with appropriate standards. . . . When the legislature itself acts within the broad field of legislative discretion, its determinations are conclusive. When the legislature appoints an agent to act within that sphere of legislative authority, it may endow the agent with power to make findings of fact which are conclusive, provided the requirements of due process which are specially applicable to such an agency, are met, as in according a fair hearing and acting upon evidence and not arbitrarily. . . .' "

This states a general rule of legislative authority in keeping with modern conditions of commerce. Our own Legislature has its specific authority which it has enjoyed at least since 1911 by special provision of the Constitution itself. From this I conclude that a passenger stage corporation is nothing other than a certain type of common carrier over which the Railroad Commission, without any legislative enactment, must exercise its regulatory power solely by virtue of section 22 of article XII.

From these considerations also it appears conclusive to me that operations such as those conducted by the defendant Stolzoff are not such as to be regulated under the constitu-

tional provision, but were local and partook of the nature of private business. As indicated in *Allen* v. *Railroad Commission*, 179 Cal. 68 [175 P. 466, 8 A.L.R. 249] by Justice Shaw and by Justice Olney in *Van Hoosear* v. *Railroad Commission of California*, 184 Cal. 553 [194 P. 1003], the dedication of private property to public use is not a trifling matter and shall not be presumed in the absence of an intent and an intent shall not be presumed. The decisions I have cited, the framing of the particular constitutional provisions, the care and caution exercised by the Legislature in conferring additional powers upon the commission, the care with which the commission itself used over a long course of years not to usurp jurisdiction, are all circumstances which should warn this court of the neighborhood of principles fundamental to a free people. We are dealing here with public and not private law. I readily concede that the Superior Court in the exercise of its equitable jurisdiction may and should consider policy given expression in public law in suits between private litigants. Such I understand to be the decisions in *Miller* v. *Railroad Commission*, 9 Cal.2d 190 [70 P.2d 164, 112 A.L.R. 221], and *Truck Owners etc. Incorporated* v. *Superior Court*, 194 Cal. 146 [228 P. 19], both cited by the majority.

One word more. A rehearing was granted herein to give consideration to *In re Marriott*, 218 Cal. 179 [22 P.2d 692]. So far as we are interested now, that case decided three things. (1) Section 77 of the act will support a criminal complaint against the employee, agent or officer of a public utility where it is conceded that section 50¼ was violated. (It may, however, be noted that even so, the decision predated the effective date of § 50⅓.) (2) That if petitioner was a private carrier as a matter of fact this would constitute a complete defense, but in a habeas corpus proceeding the court would not examine the merits, and (3) That section 50¼ is not discriminatory, and is a valid exercise of regulatory power conferred by the state upon the Railroad Commission.

In conclusion, the convictions should be reversed upon the above considerations: (1) Because the defendants' operations are not of the type which the state has undertaken to supervise and regulate inasmuch as they were local in character, are indistinguishable from those of a taxi service, and were but temporary and incidental to the war emergency, and quite similar to the "share the ride" practice of all

patriotic citizens at the time. (2) Because until the Railroad Commission in the proper exercise of the powers conferred upon it has a hearing and determines that the operations are of the class which is regulated, they could not be violators of section 50¼.

It is the constitutional right of the defendants not to be convicted of violating, that is to say, of transgressing, the provisions of section 50¼ by operating as passenger stage corporations unless they be, in fact, such utilities subject to regulation and control by the commission. In my opinion, the essential proof requires a showing that their status for regulation shall have been determined by the commission. I am driven to this conclusion by the provisions of the third paragraph of section 50¼ which reads in so far as material:

"Whether or not any stage, auto stage, or other motor vehicle is being . . . operated as a passenger stage corporation 'between fixed termini or over a regular route' *within the meaning of this act* shall be a question of fact, and the finding of the Railroad Commission thereon shall be final and shall not be subject to review." (Emphasis added.)

The privilege of trial of this all important fact by the lawfully designated tribunal is too valuable to be sacrificed by a construction of section 50¼ wholly at variance with section 1858, Code of Civil Procedure.